Reuben SMITH, et al.

v.

NAVISTAR INTERNATIONAL TRANS-PORTATION CORP., et al.

Civ. No. PN–86–1799.

United States District Court,
D. Maryland.

May 24, 1988.

Bertram M. Goldstein, Baltimore, Md., for plaintiffs.

Edward S. Digges, Michael T. Wharton, James T. Wharton, and D. Lee Rutland, Annapolis, Md., for defendant Navistar Intern. Transp. Corp.

George M. Church, and Philip B. Barnes, Towson, Md., for defendants Bostrom Seating, Inc., UOP, Inc., and Allied Signal, Inc.

## MEMORANDUM

NIEMEYER, District Judge.

Plaintiff Reuben Smith, Jr. claims that on March 10, 1983, at 10:30 in the evening, while driving a 1978 International Harvester brand truck, he "was confronted with a large road elevation" on Interstate 695 around Baltimore. Unable to avoid this area, he "hit the bump" with the result that he was bounced and hit the ceiling of the cab. He claims that the pneumatic seat on which he was seated was defective in that excessive air pressure "leaked into the seat" through a valve which incorrectly regulated the air pressure, thereby causing the seat to "throw the driver into the cab's ceiling on rough road surfaces."

Somewhat more than three years after the incident, on May 2, 1986, plaintiff and his wife filed suit in the state court against Navistar International Transportation Corporation (Navistar),[1] the manufacturer of the truck, and Bostrom Seating, Inc., the purported manufacturer and supplier of

---

1. By this time International Harvester had changed its name to Navistar International Transportation Corporation.

the seat in question.[2] They sued for negligence in the design, manufacture and sale of the seat and for strict liability in tort. By virtue of diversity jurisdiction, the action was removed to this Court. The defendants Navistar and Bostrom Seating have filed crossclaims against each other.

The seat at issue was a Bostrom "Levelair" model which shortly after the incident was removed from the truck by Reuben Smith's employer, who was the lessee of the truck. Thereafter, the seat was lost or destroyed and its whereabouts are currently unknown.

Bostrom Seating, Inc. has filed a motion for summary judgment as to both the claim of the plaintiffs and the crossclaim of Navistar, alleging that it did not come into being until almost two years after the incident and that it was not responsible for any tort liability that arose before it was incorporated. It was incorporated in January, 1985 and shortly thereafter acquired the assets of the Bostrom division of UOP, Inc. (UOP), the actual manufacturer of the seat in question. UOP is the wholly-owned subsidiary of Allied–Signal, Inc.[3]

In the face of the pending summary judgment motion of Bostrom Seating, Inc., the plaintiffs amended their complaint to name UOP and its parent, Allied–Signal, Inc. The amended complaint was filed on November 22, 1987, over four years after the incident, and concededly well beyond the applicable statute of limitations.[4] UOP and Allied–Signal predictably moved to dismiss the amended complaint as untimely. The plaintiffs responded to this motion relying on Rule 15(c), F.R.Civ.P., which specifies when an amendment relates back.

For the reasons that are give hereafter, both the motion for summary judgment of Bostrom Seating, Inc. and the motions to dismiss of UOP and Allied–Signal will be granted.

## I

### Successor Corporation Liability

The parties agree that the seat in question was designed, built and supplied to Navistar by UOP some time in or before 1978. If negligence entered into the design or manufacturer of the seat, the tort feasor was UOP. UOP was a viable corporation at the time the injuries were sustained by the plaintiffs and it continues to remain so today.

Plaintiffs did not initially sue UOP. Rather, they sued a Delaware corporation, Bostrom Seating, Inc., which was created in 1985 to purchase the assets of UOP's seating manufacturing operations, known as the Bostrom Division of UOP. Since there is a substantial question whether plaintiffs' later filed amended action against UOP will survive the challenge under the statute of limitations, the plaintiffs urge this Court to hold Bostrom Seating, Inc. responsible for the alleged tortious conduct of UOP under a doctrine that Bostrom Seating, Inc. impliedly assumed responsibility because it purchased in essence the entire Bostrom Division of UOP, and Bostrom Seating, Inc. is, therefore, nothing more than a continuation of the business of Bostrom Seating Division. Plaintiffs rely on *Polius v. Clark Equipment Co.*, 608 F.Supp. 1541 (D. St. Croix, V.I.1985) and similarly decided cases.

2. The plaintiff initially named also H.O. Bostrom Company, Inc., the company apparently engaged in the distribution of the Bostrom brand seats, but that defendant has been voluntarily dismissed with prejudice.

3. At the time of the incident, UOP was a wholly-owned subsidiary of the Signal Companies. Subsequently, the Signal Companies merged with the Allied Corporation to become Allied Signal, Inc. There is no dispute that Allied Signal, Inc. is a successor-in-interest and responsible for liabilities of the Signal Companies.

4. The applicable statute of limitations under Maryland law for negligence and for strict liability in tort is three years as provided by the Courts and Judicial Proceedings Article, § 5–101, Maryland Annotated Code. Since the plaintiff filed a claim under the Workers' Compensation Act, the Act extends the limitations period against third persons for an additional sixty-day period. Article 101, § 58, Maryland Annotated Code. Under the calculation of all parties, suit had to be filed on or before May 10, 1983, in order to be timely.

Ordinarily, a corporation that acquires the assets of another corporation is not liable for the debts and liabilities of the predecessor corporation. Exceptions to the general principle have developed to impose liability on the successor corporation when: (1) there is an expressed or implied assumption of liability; (2) the transaction amounts to a consolidation or merger; (3) the purchasing corporation is a mere continuation of the selling corporation; or (4) the transaction is entered into fraudulently to escape liability for debts. *Knapp v. North American Rockwell Corporation,* 506 F.2d 361 (3rd Cir.1974); *Hanlon v. Johns–Manville Sales Corporation,* 599 F.Supp. 376 (N.D.Iowa 1984).

Although the Maryland courts have not had occasion to address this issue, we have no reason to doubt that the general exceptions noted above would not be accepted as they are in most jurisdictions, and we therefore conclude that this is the law of Maryland unless and until the Court of Appeals suggests otherwise. *See Dawejko v. Jorgensen Steel Co.,* 290 Pa.Super. 15, 434 A.2d 106 (1981); *Mozingo v. Correct Manufacturing Corp.,* 752 F.2d 168 (5th Cir.1985); *Shannon v. Samuel Langston Co.,* 379 F.Supp. 797 (W.D.Mich.1974); *Bonee v. L & M Construction Co.,* 518 F.Supp. 375 (M.D.Tenn.1981).

Some of the exceptions are expressly codified by statute in Maryland. Section 3–115(c) of the Corporations and Associations Article, Maryland Annotated Code, provides that upon the transfer of all or substantially all assets, "[t]he successor is liable for all the debts and obligations of the transferror to the extent provided in the Articles of Transfer." Section 3–114(e), Corporations and Associations Article, Maryland Annotated Code, provides that following a consolidation or merger "[t]he successor is liable for all debts and obligations of each nonsurviving corporation." These two statutes are very similar to the first two exceptions to the traditional rule recited above. Additionally, the Maryland Uniform Fraudulent Conveyance Act, § 15–201 *et seq.,* Commercial Law Article, Maryland Annotated Code, protects the rights of creditors of a corporation which transfers its assets with an intent to defraud or without fair consideration in a manner similar to the fourth exception noted above.

Absent agreement by the successor corporation, its conduct must manifest an intent to assume the tort liability of its predecessor, or the equities must be sufficiently strong to impose that liability on the successor corporation. In the absence of an implied assumption of liability or the imposition of such liability under an overriding equity, the tort liability of a predecessor corporation will not be transferred to its successor. When the facts show that the successor corporation is a substantial continuation of the selling corporation, courts have imposed liability to third parties on the successor corporation even if to do so is contrary to the expressed intention of the parties to the agreement of transfer. *See Cyr v. B. Offen & Co., Inc.,* 501 F.2d 1145 (1st Cir.1974).

A small minority of jurisdictions has attached tort liability to the transfer of a product line. *Ray v. Alad Corp.,* 19 Cal.3d 22, 136 Cal.Rptr. 574, 560 P.2d 3 (1977); *Ramirez v. Amsted Industries, Inc.,* 86 N.J. 332, 431 A.2d 811 (1981). In each of those cases the predecessor corporation ceased to exist and the successor corporation continued the product line of the predecessor corporation. The theory suggested by these cases is that the burdens of product liability flow with the benefits. We are not prepared to say that Maryland will adopt this exception and plaintiffs have not urged us to do so.

When UOP sold its Bostrom Division to the newly formed Delaware corporation, Bostrom Seating, Inc., the agreement between the parties provided that UOP would retain liability for damages incurred before January 26, 1985, and that Bostrom Seating, Inc. would assume liability for damages sustained after that date, even if the product had been manufactured before that date. Paragraph 3 of the agreement made between the parties specifies the scope of assumption of liability and the scope of exclusion.

[Bostrom Seating, Inc.] ... shall assume as of the closing date [January 26, 1985] ... any and all liabilities, losses and damages arising out of or resulting from ... any accident or occurrence occurring subsequent to the closing date resulting in personal injury, sickness, death, property damage, property destruction or loss of use of property arising out of or resulting from the operation of the business purchased hereunder. ...

A subsequent portion of paragraph 3 of the agreement provides the obverse:

[Bostrom Seating, Inc.] shall not assume or be deemed to have assumed any liability or obligation arising out of or resulting from ... any accident or occurrence occurring prior to the closing date [January 26, 1985] resulting in personal injury, sickness, death, property damage, property destructions or loss of use of property arising out of or resulting from the operation of the business of Bostrom U.S. Division including, without limitation, the performance of any contract or the ownership, operation or use of any product designed, manufactured, installed or marketed by [UOP] for any period prior to the closing date.

The Court concludes that Bostrom Seating, Inc. did not expressly assume liability for the torts alleged by the plaintiffs in this case.

The plaintiffs urge that, while this agreement may bind the parties, third parties who are without knowledge of the agreement are not bound by it, and Bostrom Seating, Inc. should be held responsible as a successor under the doctrine of continuing enterprise. In *Polius v. Clark Equipment Co.*, 608 F.Supp. 1541 (D. St. Croix, V.I., 1985), the plaintiff was injured by an allegedly defective crane designed and manufactured by BLH. After the crane was manufactured and sold, BLH sold all of its crane manufacturing assets to Clark Equipment Company. Thereafter, it sold its remaining assets to other companies and within a year became an inactive corporate shell. It was formally dissolved several years later in 1976. When the plaintiff Polius was injured in 1983, he sued Clark as a successor corporation to BLH, even though BLH was the tort feasor. BLH was no longer in business, although its parent corporation, Armor, still was and agreed to indemnify Clark for such suits brought after the sale of assets. In holding Clark responsible for the negligent design and manufacture of BLH, the court applied the following four-pronged test:

The guidelines used in determining whether products liability may attach to a purchasing corporation on the theory of continuing enterprise are:

1. Continuity of management, personnel, physical location, assets and general business operations of the selling corporation; and

2. Selling corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practicably possible;

3. Purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations to the selling corporation; and

4. Purchasing corporation holds itself out to the world as the effective continuation of the seller corporation.

The court there observed that not all factors needed to be present so long as "the totality of the transaction demonstrates a basic continuity of the enterprise." The court went on to acknowledge that the fact that Armor was indemnifying Clark was important to its decision to impose liability on Clark. Armor was the parent of the original tort feasor.

Likewise, the successor corporation in *Cyr v. B. Offen & Co., Inc.*, 501 F.2d 1145 (1st Cir.1974) was also held liable on a continuity of enterprise theory. Plaintiff was injured in 1969 while cleaning a printing press when a fire occurred in the drying oven in which he was working. Plaintiff sued B. Offen & Co., Inc. as the manufacturer and seller of the press. B. Offen & Co., Inc., however, was not formed until after plaintiff's employer had purchased the press. The press had actually been manufactured by B. Offen Company, which

was purchased in 1963 when the sole proprietor died, by a group of the company's employees. The new corporation chose to use virtually the same name and agreed to operate the Offen Business continuously and in accordance with its predecessor's business practices and policies. The purchase included good will and contract obligations. No notice was given to customers that a new business was beginning and the new corporation advertised itself as a forty year old business. B. Offen & Co., Inc. explicitly contracted to assume certain liabilities, but specifically excluded tort liability. In finding the successor liable in spite of the explicit contract language, the court noted that "if as a group the same employees continue, without pause to produce the same products in the same plant, with the same supervision, the ownership of the entity which maintains essentially the same name cannot be the sole controlling determinant of liability."

The underlying policy for imposing product liability on a successor corporation, in the absence of an expressed assumption of liability, under this doctrine of continuity of enterprise is the demonstration that the successor corporation has taken the place of the predecessor corporation and therefore is presumed to have assumed the liability. In each of the cases cited, the predecessor corporation dissolved, went out of business or was no longer available to be sued.

In the present case, UOP sold off only a portion of its business representing approximately five percent of its total operations. UOP continued as a viable corporation and was available to be sued throughout the applicable period. The circumstances presented here do not fall within the guidelines established by *Polius* and, more importantly, within the underlying policy that the successor corporation has merely stepped into the shoes of the predecessor corporation and therefore is assumed to take on the liability.

 The plaintiffs in this action would have us focus on the language in *Polius* where the court pointed out it was not necessary that all factors be present.

While the predecessor corporation in *Polius* did in fact go out of business, we believe that in order to impose liability on a successor corporation that has not expressly accepted responsibility for prior tort liability, there must be a substitution of one corporation for the other in the continuity of enterprise. That is not the case before the Court. UOP is the alleged tort feasor and was available to be sued. Why it was not sued is not clear on the record. Indeed, the plaintiffs have now attempted to sue UOP, but more than four years after the incident in question. Bostrom Seating, Inc., when it acquired a portion of UOP's business, albeit an entire division, did not step into the shoes of UOP and did not substantially continue its business. It took over only a portion of its business, leaving a viable corporation to be sued for its tortious conduct. While there was a continuity of the Bostrom Seating operations, we are unwilling, contrary to the expressed intent of the parties, to impose liability on Bostrom Seating, Inc. in the circumstances of this case.

For the foregoing reasons, the motion of Bostrom Seating, Inc. for summary judgment will be granted.

## II

### Relation Back of Amendment

 With leave of Court, the plaintiffs filed an amended complaint on November 22, 1987, adding UOP, Inc. and its parent, Allied Signal, Inc., as defendants. The complaint alleged the same causes of action that were included in the original complaint. Both UOP and Allied Signal filed motions to dismiss on the grounds that the claims are barred by the statute of limitations specified in Courts and Judicial Proceedings Article, § 5–101, and Workers' Compensation Act, Article 101, § 58, of the Maryland Annotated Code. The combination of those statutes provides that an action must be brought within three years and two months after the cause of action has accrued. The last day for filing suit, by the computation of all parties in this action, was May 10, 1986.

UOP manufactured the seat in question in 1978, or earlier, and the incident occurred some five years later in 1983. The suit against Bostrom Seating, Inc. and Navistar was not commenced until yet another three years later. By then the seat was lost or destroyed and UOP contends it never had the opportunity to inspect or investigate it.

It is significant to this discussion that both Bostrom Seating, Inc. and Navistar did not receive notice of the suit against them until after the limitations period had expired. The limitations period expired on May 10, 1986, and they received service of process on May 12, 1986. Likewise, notice to UOP and Allied, whether direct or imputed, was not received within the limitations period. Direct notice by service of suit papers was received by UOP some nine years after it manufactured the seat in question and some four years after the incident.

Plaintiffs contend that under Rule 15(c), the amended complaint relates back in time to the filing of the original complaint. That section provides:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment that party (1) has received such notice of the institution that the party will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

The question whether Rule 15(c) and the relation back will save the untimely filing in this case is decided squarely by the decision of the Supreme Court in *Schia-*

*vone v. Fortune,* 477 U.S. 21, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986).

The plaintiffs in *Schiavone* filed suit against "Fortune" on May 9, 1983 for a libel in connection with a publication that appeared in Fortune magazine almost a year earlier. Fortune is only a trademark for the financial magazine published by Time, Incorporated. The issue in question was published between May 11 and May 19, 1982. Over a year later (which was the applicable limitations period under New Jersey law), petitioner served suit on the resident agent for Time, who rejected service since Time, Incorporated had not been named. An amended suit against Time, Incorporated was served in July, 1983.

In dismissing the case against Time, Inc. as untimely, the Supreme Court addressed Rule 15(c) observing:

> Relation back is dependent upon four factors, all of which must be satisfied: (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for the mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations.

Key to the Court's conclusion is the fact that even though the complaint was timely filed, notice to Time, Inc. of the filing of the suit, whether by the first or amended complaint, was not given within the limitations period.

> The linchpin is notice, and notice within the limitations period. Of course, there is an element of arbitrariness here, but that is a characteristic of any limitations period. And it is an arbitrariness imposed by the legislature and not by the judicial process.

*Id.* 106 S.Ct. at 2385.

Plaintiffs contend that they were misled and/or confused by Bostrom Seating's answer to a request for admissions given on May 27, 1987, in which it admitted that it had designed, manufactured and sold the

seat in question prior to March 10, 1983. The Court can understand plaintiffs' confusion in light of this admission and Bostrom Seating's subsequent denial and withdrawal of that admission. But this is immaterial to our decision because the admission itself in May of 1987 was already one year beyond the limitations period and could not have adversely misled the plaintiffs. The same is true with respect to their contention that Bostrom Seating, Inc. failed to deny responsibility for the manufacture of the seat in their pleadings which were dated July 11, 1986, and later.

Plaintiffs also urge that because of the close relationship between Bostrom Seating, Inc. and its predecessor, the Bostrom Division of UOP, UOP should be imputed with knowledge of the suit. While this relationship could have a bearing on the question of notice, it is immaterial in this situation since plaintiffs did not serve Bostrom Seating, Inc. until after the limitations period had expired. Imputed notice to UOP, Inc. and Allied, Inc. would have to be within the statutory period. *Schiavone, supra* at 2384.

Plaintiffs finally contend that the defendants UOP and Allied Signal received actual notice of their claims even before suit was filed through a liability insurance carrier who insured both UOP and Bostrom Seating, Inc. Even were knowledge to the insurance company to be imputed to its insureds, which we do not here hold, knowledge of a claim prior to the filing of a complaint is not the equivalent of notice of the institution of an action.

For all of these reasons, the Court concludes that the amended complaint naming UOP and Allied Signal will not relate back to the filing of the original complaint against Bostrom Seating, Inc. and Navistar.

The Court will enter a separate Order granting the motion of Bostrom Seating, Inc. for summary judgment and the motions of UOP and Allied Signal to dismiss.