LOCKHEED MARTIN
CORPORATION,
Appellant,

v.

August GORDON, Alfred Allen and wife, Mary Allen, Eddie Bennett and wife, Rosa Mae Bennett, Eddie J. Billingsley and wife, Arlene Billingsley, Willie J. Bolden and wife, Patricia Bolden, Oscar William Booker, Samuel Boswell and wife, Billie Ruth Boswell, Robert L. Brasfield and wife, Dorothy A. Brasfield, Dennis Brown, Individually and as personal Representative of The Estate of Porter Bradley Brown, Burt Brown, Jr., and wife, Dora Brown, John T. Bryant, Carrie Bryant and Robert Lee Bryant, Individually and as Representatives of the Estate of Samuel W. Bryant, Leonard B. Burroughs and wife, Olene Burroughs, Joe Louis Bush, Jr., and wife, Alma Bush, Lim Cabbil, Jr., and wife, Rosie Cabbil, Tom W. Carpenter and wife, Weddie Carpenter, Thelma Chatman, Individually and as Personal Representative of the Estate of Claude D. Chatman, Jr., Eddie Clark Jr., Robert Lee Coleman and wife, Bertha Coleman, David F. Collins and wife, Lizzie Collins, Charlie Collins, Jr., and wife, Ernestine P. Collins, Wilbur Cosby and wife, Sarah Cosby, Ernest Richard Craig and wife, Emma Craig, Robert Lee Crowell and wife, Willie Lee Crowell, Charlie Day and wife, Claudia Day, Sam Dudley and wife, Sirlelia Dudley, John W. Davis and wife, Rebecca Davis, Clarence E. Englebert and wife, Zellena Englebert, Ben Franklin and wife, Jeanette Franklin, Clarence L. Gadson and wife, Claudette Gadson, Charlie Lee Gay and wife, Dorothy Gay, Mortimer Gilbert and wife, Evelyn Gilbert, Samuel Lee Hall and wife, Geraldine Hall, Evelyn Hallman, Individually and as Personal Representative of the Estate of Charles W. Hallman, Sadie Lee Hanks, Individually and as Personal Representative of the Estate of Joe Hanks, Willie Darnell Harper and wife, Fannie Harper, Willie Lee Hemphill, Individually and as Personal Representative of the Estate of David Hemphill, Sr., Johnny Wesley Henderson, Sr. and wife, Katie Henderson, Joseph R. Henson, David Sr. Hicks and wife, Wilma Hicks, William W. Hill and wife, Patricia Ann Hill, Emory Taylor Holcombe and Wife, Sara Holcombe, James O. Holifield, Jr. and wife, Clara Mae Holifield, Sherry Hood, Individually and as Personal Representative of the Estate of William H. Hood, Frank Hopkins, Individually and as Personal Representative of the Estate of Floyd Hopkins a/k/a Floyd Zell Hopkins a/k/a Flozell Hopkins, Wilson Hubbard, John Oliver Hudson and wife, Annie Laura Hudson, Lillian Marie Hughes, Individually and as Personal Representative of the Estate of Jimmie Lee Hughes, Joe Nathan Hunter and wife, Dorothy Hunter, Hosie Hunter, Jr. and wife, Louise Hunter, James Earl Ingram, Individually and as Personal Representative of the Estate of Tommie L. Ingram, L.D. Jackson and wife, Mattie Jackson, Odell Jackson, Jr. and wife, Stella Jackson, Sam Jackson Jr. and wife, Annie Jackson, Dora V. Jackson, Individually and as Personal Representative of the Estate of Scarley Jackson, Sr., Mack F. Johnson, Sr., Marion Johnson and wife, Ileen Johnson, Wallace Cornelius Johnson and wife, Dorothy Johnson, Bob Jones and wife Omah Jones, O.C. Jones, Jr. and wife, Lillie Jones,

Clarence David Judkins and wife, Linda Judkins, James Junkin and wife, Edwina Junkin, Rilla Junkin, Individually and as Personal Representative of The Estate of William R. Junkin, Edward Rufus King, Robert Edward Lee and wife, Theodore Lee, Lemmie D. Lewis and wife, Dorothy Lewis, Levi Lyles and wife, Carrie Lyles, Simon Mabry and wife, Rena C. Mabry, Willard Mckeller, Ralph E. Mckenney and Reginald A. Mckinney, Individually and as Personal Representatives of The Estate of William E. Mckenney, Curtis Mcmullen and wife, Anna J. Mcmullen, Don Mcmullen, Individually and as Personal Representative of The Estate of Vonnie Mcmullen, Robert E. Nickerson, Individually and as Grandson and as Personal Representative of the Estate of Sam Millender, Milton L. Miller and wife, Mary Elizabeth Miller, William Mills and wife, Carolyn Mills, William Page, Sr. and wife, Ethel Mae Page, Emanuel Milton Palmer, Fred Palmer, Jr., Wayne Pate, Pauline Patterson, Individually and as Personal Representative of the Estate of Joseph Wilton Patterson a/k/a Wilton Patterson, Robert James Perkins and wife, Rebecca Perkins, John Pleasant and wife, Lula Mae Pleasant, Flenoid Province and wife, Emma Province, James E. Pylant, Melvin O. Pylant and wife, Bonnie Pylant, Thomas Ray Reece and wife, Beatrice Cecilia Reece, William Cecil Reed, Elijah Richardson, Earnest S. Robertson and wife, Annie Lee Robertson, Ruben Stacy Robertson, Individually and as Personal Representative of the Estate of Ruben Robertson, Willie N. Rogers, Willie C. Ryan and Margarite Jones, Individually and as Personal Representative of The Estate of Freeman Ryans, Richard Sanders and wife, Julia Sanders, Willie Sewell and wife, Lucille Sewell, Jimmie Charles Sheppard and wife, Dorothy Jean Sheppard, Paris W. Shirley and wife, Joan Shirley, Robert Lee Shirley and wife, Catherine Shirley, Benjamin Shorter and wife, Hattie M. Shorter, Moses Simmons and wife, Virginia Simmons, John Patton Smalley and wife, Williedean Smalley, Pealie Stewart, O.C. Strickland and wife, Jean Strickland, Ottis Wilson Strickland and wife, Margie Strickland, Glenn Doran Sullivan and wife, Martha Sullivan, Olivia Taylor, Individually and as Personal Representative of The Estate of Dred Taylor, John W. Taylor, Thomas Taylor and wife, Jessie Taylor, John B. Tidwell and wife, Frances Tidwell, David Niven, Individually and as Personal Representative of the estate of Jack Tilley, Jr., Dave Townsend and wife, Clozell Townsend, Jerry W. Tubbs and wife, Brenda Tubbs, Rufus Walker, Sr., George Ware and wife, Silver Ware, Rubbie White, Sr., George Williams and wife, Ruby Lee Williams, John A. Williams, John D. Williams and wife, Lorene Williams, Willie G. Williams and wife, Dollie Mae Williams, Jimmie Lewis Woods, Individually and as Personal Representative for the Estate of Lawyer Woods, Appellees.

No. 01–99–00436–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 30, 2000.

Robert M. Martin, Michael G. Oddo, Vic Houston Henry, Dallas, for Appellant.

Guy Gladstone Fisher, Richard N. Countiss, Denman H. Heard, Houston, for Appellees.

Panel consists of Justices MIRABAL, TAFT, and PRICE.[*]

## O P I N I O N

TIM TAFT, Justice.

This is a successor-liability case decided on cross-motions for summary judgment. Appellant, Lockheed Martin Corporation, challenges the summary judgment rendered in favor of appellees (the workers). The workers are members of a class of plaintiffs seeking damages for personal injuries resulting from exposure to silica and silica-containing dust. Lockheed claims the trial court misconstrued an agreement for the acquisition of corporate assets in ruling that Lockheed is contractually liable, as a successor to Wedron Silica Company of Delaware, for any damages adjudicated against Wedron for the workers'

[*] The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

claims. Lockheed also claims the trial court erred by not rendering summary judgment in favor of Lockheed on limitations grounds. The workers contend the judgment is not final and that we therefore lack jurisdiction to consider this appeal. We reject the workers' jurisdictional challenge and reverse and render judgment that Lockheed is not contractually liable as a successor to Wedron.

### Facts and Procedural History

The workers filed suit in 1995. They originally numbered 140 plaintiffs, who sued more than 80 defendants for injuries they claim resulted from exposure to silica compounds at foundries where the workers were employed. The defendants include manufacturers and suppliers of silica products and manufacturers and suppliers of safety equipment for the foundries. One of these defendants, Martin–Marietta Corporation, purchased the assets of Wedron Silica Company of Delaware in 1979. Wedron allegedly supplied silica compounds to the foundries. As a result of a series of corporate transactions, Lockheed succeeded Martin–Marietta as successor-in-interest to Wedron. The workers claim that Wedron supplied industrial silica sand to their factories, but the workers apparently did not timely sue the correct Wedron entity.[1] Lockheed was added as a defendant shortly before 10 of the workers went to trial in the first stage of the class-action litigation.

Lockheed's liability for Wedron's alleged torts against the workers depends on whether Lockheed's predecessor, Martin–Marietta, assumed liability for those torts when it purchased Wedron's assets in 1979. In keeping with its interpretation of the 1979 purchase and sale agreement, Lockheed answered the workers' lawsuit with a verified denial that challenged its capacity to be sued. *See* TEX.R. CIV. P. 93(1)-(2), (4).

The parties filed cross-motions for summary judgment based on their interpretations of the 1979 purchase and sale agreement. In moving for summary judgment, the workers maintained that Maryland law governed interpretation of the agreement because Lockheed is a Maryland corporation, and that Lockheed incurred successor liability for the workers' alleged torts due to Martin–Marietta's having expressly assumed liability for Wedron's torts under the 1979 purchase and sale agreement. Lockheed referenced Delaware choice-of-law provisions of the agreement in its motion for summary judgment, but claimed it was immaterial whether Texas, Maryland, or Delaware law controlled, because the law of each of these states established that Martin–Marietta had neither expressly nor impliedly assumed liability for Wedron's contingent torts, and that Lockheed therefore had no successor liability. Lockheed also moved to sever the successor-liability controversy for appeal.

The trial court's order rendering summary judgment in favor of the workers states in part:

... [T]he Cross–Motion for Summary Judgment filed by the [workers] is GRANTED and this Court enters a final Judgment that Lockheed Martin Corporation is contractually liable for any damages adjudicated against Wedron Silica Company of Delaware with respect to [the workers'] alleged cause of action.

It is further ORDERED that all of the [workers'] causes of action against the Defendant Lockheed Martin Corporation be and the same are hereby SEVERED from the remainder of this suit and this judgment shall be final between said parties.

It is further ORDERED that the Clerk assign the cause of action between

---

1. The record shows that the workers had initially sued an Ohio corporation, Wedron Silica Company. The Ohio Wedron corporation prevailed on a motion for summary judgment claiming it had ceased operations in 1980 and could not have furnished products to the workers' factories.

[the workers] and the Defendant Lockheed Martin Corporation a separate cause number and that this Judgment be removed from the docket of the captioned case.

All relief not expressly granted herein is denied.

Although it specifies that Lockheed "is contractually liable" for any damages adjudicated against Wedron, the face of the order does not reflect whether the trial court concluded that Martin–Marietta had expressly assumed liability under the 1979 purchase and sale agreement, or merely impliedly assumed liability. The order clearly renders summary judgment in favor of the workers, however, who had premised their motion solely on Martin–Marietta's having expressly assumed liability under the 1979 purchase and sale agreement. By granting the workers' motion for summary judgment and rendering judgment in their favor, therefore, the trial court necessarily concluded that Martin–Marietta had expressly assumed liability for Wedron's contingent torts under the 1979 purchase and sale agreement.

Following severance, the trial court entered a nunc pro tunc order that confirmed its earlier rulings and formally transferred specified documents to constitute this cause.

### Is the Judgment Final?

■ The workers raise a preliminary, jurisdictional challenge, contending we must dismiss for lack of jurisdiction because the trial court resolved only the successor-liability issue and did not intend to dispose of all issues and parties. To be final and appealable, a summary judgment must dispose of all parties and issues before the court. *Mafrige v. Ross,* 866 S.W.2d 590, 591 (Tex.1993). When, as here, a summary judgment includes "Mother Hubbard" language purporting to dispose of all claims and parties, the general rule is that we must treat the judgment as final for purposes of appeal. *Inglish v. Union State Bank,* 945 S.W.2d 810,

811 (Tex.1997) (citing *Mafrige,* 866 S.W.2d at 592); *Kaigler v. General Elec. Mortgage Ins. Corp.,* 961 S.W.2d 273, 274 (Tex. App.—Houston [1st Dist.] 1997, no pet.); *see also Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 625 (Tex.1996) (stating that a judgment becomes final when both parties move for summary judgment and the trial court grants one motion and denies the other).

■ It is undisputed that Lockheed did not manufacture or supply any product used at the foundry, that any liability assessed against Lockheed for Wedron's torts requires a determination that Martin–Marietta assumed liability for those torts when it purchased Wedron's assets in 1979, and that the amount of liability would be the amount of damages adjudicated against Wedron. Lockheed's liability as successor is the only issue presented by the parties' pleadings, the only issue presented by the cross-motions for summary judgment, and the only issue resolved by the summary judgment order, which recites, several times, that it is a final judgment. The same order denied Lockheed's motion for summary judgment and denied all relief not expressly granted.

We conclude the judgment is final and overrule the workers' jurisdictional challenge.

### Standard of Review

We follow the usual standard of review for traditional summary judgments granted under rule 166a(c) of the Rules of Civil Procedure: A party seeking summary judgment must establish each element of its claim or defense, as a matter of law, or negate an element of each claim or defense of the opposing party, as a matter of law. TEX.R. CIV. P. 166a(a)-(b) (comment). This standard is well-established in cases construing written agreements. *Coker v. Coker,* 650 S.W.2d 391, 393–94 (Tex.1983) (construing property-settlement agreement containing guaranty provisions); *Sears, Roebuck & Co. v. Commercial Union Ins.*

*Corp.*, 982 S.W.2d 151, 154 (Tex.App.—Houston [1st Dist.] 1998, no pet.) (construing insurance contract); *Crispin v. Paragon Homes, Inc.*, 888 S.W.2d 78, 79 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (construing deed restrictions); *Groschke v. Gabriel*, 824 S.W.2d 607, 610–11 (Tex.App.—Houston [1st Dist.] 1991, writ denied) (construing several written instruments).

■ When a motion for summary judgment raises multiple grounds, we may affirm if any ground is meritorious. *Cincinnati Life Ins. Co.*, 927 S.W.2d at 625; *Hanson v. Republic Ins. Co.*, 5 S.W.3d 324, 327 (Tex.App.—Houston [1st Dist.] 1999, pet. denied). The supreme court has further instructed us to consider all properly preserved grounds that the trial court rules on, but has allowed us, in the interests of judicial economy, to consider other grounds not ruled on that a movant preserves for review. *Cincinnati Life Ins. Co.*, 927 S.W.2d at 626. In this case, we may determine all questions presented, including any error in overruling Lockheed's motion, because the workers and Lockheed each moved for final summary judgment relief. *See Cincinnati Life Ins. Co.*, 927 S.W.2d at 625; *Hanson*, 5 S.W.3d at 327. Accordingly, while the trial's court's order is premised on Martin–Marietta's having expressly assumed liability for Wedron's torts, we also address whether Martin–Marietta impliedly assumed that liability.

### Successor Liability by Express or Implied Assumption

Lockheed's first point of error challenges the summary judgment rendered in the workers' favor and the denial of its own motion for summary judgment. Lockheed contends that, in ruling that Lockheed is contractually liable as Martin–Marietta's successor for any damages awarded to the workers, the trial court misconstrued the terms of the 1979 agreement by which Martin–Marietta purchased Wedron's assets. Lockheed maintains it cannot be contractually liable for Wedron's alleged torts against the workers because Martin–Marietta neither expressly nor impliedly assumed liability for those torts. As in the trial court, the workers contend Martin–Marietta expressly assumed Wedron's torts under the 1979 purchase and sale agreement.

### A. Choice of Law

■ The 1979 agreement formalizing Martin–Marietta's purchase of Wedron's assets specifies that Delaware law controls the validity, interpretation and performance of the agreement. Determining which state's law applies is a question of law. *Gutierrez v. Collins*, 583 S.W.2d 312, 319 (Tex.1979). Except when a contract with a valid choice-of-law clause applies, *Duncan v. Cessna Aircraft, Co.*, 665 S.W.2d 414, 421 (Tex.1984), Texas courts apply the substantive law of the state with the most significant relationship to the particular dispute at issue. *Gutierrez*, 583 S.W.2d at 318–19 (adopting RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 6, 145 (1971)). Neither Lockheed nor the workers dispute the validity of the choice-of-law provision. Provided the law of the chosen state bears some reasonable relationship to the parties and the transaction, Texas will apply the law specified in the contract. *De Santis v. Wackenhut Corp.*, 793 S.W.2d 670, 678–79 (Tex.1990) (applying RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2) (1971)); *Securities Inv. Co. v. Finance Acceptance Corp.*, 474 S.W.2d 261, 271 (Tex.Civ.App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.).

■ Lockheed relies on the Delaware choice-of-law provision in the 1979 purchase and sale agreement to contend Delaware law controls whether Martin–Marietta assumed liability for Wedron's contingent torts. Lockheed also claims Delaware law controls under the "most significant relationship" test because Wedron is incorporated in Delaware, which therefore has a reasonable rela-

tionship to the sale of Wedron's assets.[2] As in the trial court, the workers contend we should apply Maryland law because Lockheed is incorporated in that state, which therefore has a reasonable relationship to whether Lockheed is liable for Wedron's torts. The workers alternatively contend this dispute poses no choice-of-law problems because the pertinent principles of successor liability are identical under Texas, Delaware, and Maryland law.[3]

We conclude that Delaware law controls because it is specified in the 1979 purchase and sale agreement.[4] As already noted, no one disputes the validity of the Delaware choice-of-law provisions, and Delaware has a reasonable relationship to the sale of Wedron's assets. *See DeSantis,* 793 S.W.2d at 678–79.

### 1. Majority Rule—Successor Not Liable

The Third Restatement of the Law of Torts for Products Liability states the majority rule: a successor business that purchases only the assets of another business is not subject to liability for harm caused by defective products sold commercially by the predecessor *unless:*

(1) in acquiring the assets, the successor agrees to assume liability;

(2) the acquisition results from a fraudulent conveyance to escape liability

for the debts or liabilities of the predecessor;

(3) the acquisition constitutes a consolidation or merger with the predecessor; or

(4) the acquisition results in the successor becoming a continuation of the predecessor.

*See* RESTATEMENT (THIRD) OF THE LAW OF TORTS, PRODUCTS LIABILITY § 12 (1998).[5] The rule of non-liability for asset acquisitions is frequently the reason why parties choose that option in acquiring a business, as opposed to a merger or stock acquisition, in which the predecessor's obligations and liabilities continue in the surviving entity. James Ryan & Robert Beasley, *Asset Acquisitions: Caveat Emptor,* 53 TEX. B.J. 1221, 1221 (1990).

Delaware and Maryland recognize all four exceptions to the rule of non-liability by case law. *Elmer v. Tenneco Resins,* 698 F.Supp. 535, 540 (D.Del.1988); *Nissen Corp. v. Miller,* 323 Md. 613, 617, 632, 594 A.2d 564, 565–66 (1991). The Business Corporation Act controls in Texas. The Act specifies that purchase of all or substantially all of the assets of the seller's corporation "does not make the acquiring [entity] responsible or liable for any liability or obligation of the selling corporation" unless the acquiring entity expressly assumes the liability or the obligation, or unless another statute expressly provides

---

**2.** In contending that Delaware law controls, Lockheed has abandoned its trial-court reliance on the laws of Delaware, Texas, and Maryland.

**3.** In contrast to Lockheed, which has narrowed its choice-of-law arguments, the workers have expanded theirs, by adopting Lockheed's reliance on the laws of Delaware, Texas, and Maryland, albeit toward a different result. While we may not ordinarily consider arguments not presented to the trial court when reviewing a summary judgment, TEX.R. CIV. P. 166a(c), we consider the workers' contentions here as raised by Lockheed's motion. *See Cincinnati Life Ins. Co.,* 927 S.W.2d at 625 (holding that review of cross-motions for summary judgment encompasses all questions presented to the trial court).

**4.** Nevertheless, we will demonstrate how the result would be the same under Maryland and Texas law.

**5.** The rationale for the rule of non-liability is that the successor did not sell or distribute the allegedly defective product, and therefore does not fall within the general rule by which commercial sellers and distributors of products incur liability. RESTATEMENT (THIRD) OF PRODUCTS LIABILITY § 12 cmt. a (1998) (quoting from RESTATEMENT (THIRD) OF PRODUCTS LIABILITY § 1 (1998) ("[O]ne ... *who sells or distributes* a defective product is subject to liability for harm ... caused by the defective product.") (emphasis in original)).

to the contrary. TEX. BUS. CORP. ACT art. 5.10(B)(2) (Vernon Supp.2000).[6] This controversy involves only the first exception.

## 2. Exception for Liability Assumed in Acquiring Assets

■ Texas, Delaware, and Maryland precedents all recognize the first exception, but differ in applying it. James Ryan & Robert Beasley, *Asset Acquisitions: Caveat Emptor*, 53 TEX. B.J. 1221, 1221 (1990). The successor may expressly or impliedly assume contingent liability in Delaware and Maryland. *See Elmer*, 698 F.Supp. at 540 (recognizing express and implied assumption as imposing liability on successor); *Nissen Corp.*, 323 Md. at 617, 632, 594 A.2d at 565–66, 573 (same). In Texas, the successor incurs no liability of the predecessor unless the successor expressly assumes that liability. TEX. BUS. CORP. ACT ANN. 5.10(B)(2); *see Mudgett*, 709 S.W.2d at 758. This has long been Texas law. *Southwestern Gas, Light & Power Co. v. Jay*, 275 S.W. 735, 736 (Tex. Civ.App.—El Paso, 1925, writ ref'd).

## B. Lockheed Did Not Incur Successor Liability by Express or Implied Assumption

Lockheed and the workers premise their express assumption arguments exclusively on the 1979 purchase and sale agreement by which Martin–Marietta acquired Wedron's assets. Lockheed's contentions against implied assumption likewise center on the agreement itself, rather than on the conduct of any party. Neither party contends this agreement is ambiguous.

## 1. Interpretation of an Unambiguous Written Instrument

■ We review an unambiguous written instrument as a matter of law; our focus is on ascertaining and effectuating the intent of the parties, as expressed in the instrument. *Coker*, 650 S.W.2d at 393; *Sears, Roebuck & Co.*, 982 S.W.2d at 154. To achieve this, we examine and consider the entire instrument to harmonize and give effect to all its provisions, so that none will be rendered meaningless. *Coker*, 650 S.W.2d at 393; *Mudgett*, 709 S.W.2d at 756–57 (interpreting sales agreement in successor-liability case). Delaware and Maryland follow substantially the same standards. *See Northwestern Nat'l Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 43 (Del.1996); *Jones v. Hubbard*, 356 Md. 513, 534, 740 A.2d 1004, 1016 (1999).

## 2. Terms of the 1979 Purchase and Sale Agreement

The 1979 purchase and sale agreement indicates that Martin–Marietta acquired only Wedron's assets and those liabilities disclosed on the balance sheet as of the date of closing. Section 4(B) of the agreement reflects the following concerning Martin–Marietta's and Wedron's understandings of the assets acquired and the liabilities incurred:

> At the Closing Date ... all assets shall be at the June 2, 1979 levels as shown on the Balance Sheet ... and likewise that the liabilities shall not exceed the June 2, 1979 levels shown on the Balance Sheet....

A balance sheet certified by public accountants as "representing the financial position of [Wedron] at June 2, 1979," is Exhibit C to the agreement. Neither the balance sheet nor the accompanying notes

**6.** Article 5.10(B)(1) eliminates the "de facto merger" doctrine, the third exception under the Restatement. TEX. BUS. CORP. ACT ANN. 5.10(B)(1) (Vernon Supp.2000). *See Mudgett v. Paxson Mach. Co.*, 709 S.W.2d 755, 758–59 (Corpus Christi 1986, writ ref'd n.r.e.). In *Mudgett*, the Corpus Christi Court of Appeals rejected the "mere continuation" theory, the fourth exception recognized by the Restatement, as contrary to the legislative intent of article 5.10(B). *Griggs v. Capitol Mach. Works*, rejected yet another exception, the "product line" theory, as incompatible with the basic product-liability principle, addressed in the preceding footnote, in that the successor did not create the risk associated with its predecessor's product. 690 S.W.2d 287, 294 (Tex.App.—Austin), writ ref'd n.r.e. per curiam, 701 S.W.2d 238 (Tex.1985).

lists any actual or contingent tort liabilities.

Section 1 of the agreement contains 14 clauses that list and pertain to Wedron's representations and warranties concerning its properties and liabilities. In Section 1(I), Wedron referred to Exhibits G and F of the agreement as identifying all known, pending, or threatened actions, suits, or proceedings in which Wedron was either a party or in which Wedron or its property might be affected. Section 1(I) specifically warranted, in addition, that there were no other known, pending, or threatened actions, suits, or proceedings. Concerning liabilities, Wedron stated, in Section 1(M) of the agreement:

To the best of Wedron's knowledge and belief, there are no liabilities that might adversely and materially affect Wedron's operations that would have to be required to be disclosed in a balance sheet prepared in accordance with generally accepted accounting principles consistently applied that have not been stated in the Balance Sheet or disclosed to [Martin–Marietta] under this Agreement.

In Exhibit G, which identifies three pending lawsuits and one threatened lawsuit known to Wedron, the agreement specified that Wedron and its insurers had undertaken the defense of the pending lawsuits and would undertake the defense of the threatened lawsuit if it materialized. In Exhibit F, which addressed environmental claims, Wedron identified an Illinois plant with possible violations of levels of silica dust and noise, and stated it was developing engineering and administrative measures and monitoring emissions, as requested by the Illinois Environmental Protection Agency.

Section 5 of the 1979 purchase and sale agreement defined the terms of "Sale, Purchase and Assumption." In addition to establishing the $33,000,000 purchase price and initial deposit, this section outlined the liabilities of Wedron that Martin–Marietta assumed as part of the asset purchase.

D. Except as provided below, as of the Closing Date, Wedron shall assign to [Martin–Marietta] and [Martin–Marietta] shall assume all of the obligations and liabilities of Wedron on the Closing Date including:

(i) The liabilities and obligations of Wedron on the Balance Sheet, except to the effect such liabilities and obligations shall have been discharged or satisfied prior to the Closing Date;

(ii) The liabilities and obligations of Wedron that have arisen in the ordinary course of business prior to the Closing Date and have not been discharged or satisfied by Wedron prior to the Closing Date;

(iii) The liabilities and obligations of Wedron under the pension plans covering hourly employees, labor agreements, employment contracts and future obligations in respect of Wedron's employees set forth in Exhibits H and I;

(iv) The liabilities and obligations of Wedron under the Wedron Silica Company Retirement Plan for Salaried Employees ("Salaried Plan") in respect of the participants under such Plan as of the Closing Date (other than those participants who terminated employment with Wedron prior to the Closing Date), it being understood that such liabilities and obligations will be transferred in accordance with the requirements of Federal law to a separate pension plan to be maintained by Martin Marietta, as set forth n Section 11.E; and

(v) The liabilities and obligations of Wedron under all leases of real property, or mining claims described in Exhibits A–1 or A–2; leases of equipment, machinery and tangible personal property described in Exhibit B–1; material contracts, agreements and commitments described in Exhibit D and any other agreements, contracts and commitments entered into by Wedron in the ordinary course of business;

provided, however, that [Martin–Marietta] shall not assume any other material obligation or liability of Wedron (i) that does not appear on the Balance sheet, (ii) that has not been disclosed to [Martin–Marietta] under this Agreement, or (iii) to which [Martin–Marietta] ha[s] not specifically consented in writing on or before the Closing Date to assume as of the Closing Date.

Lockheed maintains the foregoing provisions, taken together as they must be as a matter of contract law, show that Martin–Marietta assumed only those limited liabilities specified in the balance sheet and purchase and sale agreement, but did not assume any tort liability, either expressly or impliedly. Lockheed argues that the limited liabilities Martin–Marietta assumed relate solely to day-to-day operating, and that nothing in the 1979 purchase and sale agreement contemplates, or can be construed as impliedly contemplating, an agreement to assume Wedron's contingent tort liabilities. Lockheed contends its interpretation of the agreement is underscored by Wedron's having specifically retained liability for its known and anticipated torts, by the agreement's repeated references to the balance sheet as of the date of closing, which discloses no tort liabilities, and by Wedron's disclosure and express assumption of all known tort liabilities, including contingent liabilities.

The workers defend the trial court's ruling principally by relying on paragraph D of Section 5 of the 1979 purchase and sale agreement, which defines the terms of sale, purchase and assumption. Paragraph D, excerpted in full above, lists five categories of "liabilities and obligations" of Wedron that Martin–Marietta assumed "on the Closing Date." The workers rely on sub-paragraph (ii) of paragraph D, which includes, among the assumed obligations, "The liabilities and obligations of Wedron that have arisen in the ordinary course of business prior to the Closing Date and have not been discharged or satisfied by Wedron prior to the Closing

Date." The workers claim that liability for their alleged injuries is liability that Wedron incurred in the ordinary course of its business of supplying sand to the foundries and that Martin–Marietta therefore assumed that liability by this sub-paragraph.

Lockheed responds that the workers ignore the parameters under which Martin–Marietta assumed the five categories of liabilities and obligations in the subparagraphs of paragraph D. These parameters appear in the introduction of paragraph D and in its concluding clause. Paragraph D begins by qualifying the obligations that Martin–Marietta undertook in acquiring Wedron's assets with the following proviso: "Except *as provided below,* as of the Closing Date. . . ." Paragraph D then lists the five following categories of liabilities and obligations: balance sheet, which, we have noted, reflects no tort liabilities; ordinary course of business; pension plans and other employee agreements; retirement plans; and leases and other contractual commitments. But, as the concluding clause states:

provided, however, that [Martin–Marietta] shall not assume any other material obligation or liability of Wedron (i) that does not appear on the Balance sheet, (ii) that has not been disclosed to [Martin–Marietta] under this Agreement, or (iii) to which [Martin–Marietta] ha[s] not specifically consented in writing on or before the Closing Date to assume as of the Closing Date.

**3. No Express or Implied Assumption under Delaware or Maryland Law**

Lockheed and the workers each rely on *Elmer v. Tenneco Resins, Inc.,* a decision of the Unites States District Court for the District of Delaware. *Elmer* was a products liability action brought by the survivor of a patient who died from deposits of an X-ray contrast material called Thorostat. 698 F.Supp. at 536. Heyden Chemical Corporation, which manufactured and sold the Thorostat, had transferred its assets to the *Elmer* defendants. *Id.* The defendants sought summary judgment on the

successor-liability issue on grounds similar to those Lockheed argued in this case, specifically, that they had assumed only the liabilities that Heyden disclosed and that existed as of the closing date. *Id.* at 540–41.

The district judge first recognized that, under Delaware law, a successor may incur liability for its predecessor's torts by expressly or impliedly assuming liability. *Id.* at 540. In declining to grant summary judgment for the defendants, the court emphasized that while the liabilities assumed under asset acquisition were those that existed "as of the closing date," the plan also described those liabilities as "whether accrued, absolute, *contingent*, or otherwise." *Id.* at 541 (emphasis added). By specifically contemplating contingent or potential liabilities, and not simply those disclosed by the balance sheet, summary judgment for the defendants was improper. *Id.* In this case, however, Wedron assumed its known tort and contingent liabilities, while Martin–Marietta assumed no tort liabilities whatsoever. Moreover, the balance sheet here disclosed no tort liabilities, and the "liabilities and obligations" Martin–Marietta did assume under Paragraph D of Section 5 of the agreement were neither potential nor contingent. Rather, they pertained to the known, ordinary operating costs of the business, and responsibilities to the employees of the business.

Maryland, like Delaware, also recognizes express or implied assumption of liability as an exception to the general rule that a successor who purchases the assets of a business incurs no liability for the predecessor's contingent torts. *Nissen Corp.*, 323 Md. at 617, 632, 594 A.2d at 565–66, 573; *see also Smith v. Navistar Int'l Transp. Corp.*, 737 F.Supp. 1446, 1448–49 (D.Md.1988) (citing general rule on non-liability and four exceptions).

In applying the general rule of non-liability to render summary judgment for the successor entity in *Smith*, the United States District Court for the District of Maryland concluded the first exception did not apply because the successor had not expressly assumed tort liability for the plaintiff's injuries. In contrast to this case, the successor expressly assumed some liabilities in *Smith*. 737 F.Supp. at 1449–51. But the asset-acquisition agreement in *Smith* distinguished between damages "incurred" before the closing date, when the plaintiff's injuries occurred and which the predecessor retained, from liability sustained after the closing date. While the successor's express assumption included liability for products manufactured before the closing date, the agreement provided that the express assumption did not apply to injuries that occurred before the closing date. *Id.* at 1449–50. Because the plaintiff's injuries occurred before the closing date, summary judgment for the successor was proper. *Id.* at 1450. Here, there is no provision that Martin–Marietta assume any tort liability, all of which Wedron retained.

■ Martin–Marietta's and Wedron's recitals in the 1979 purchase and sale agreement occur within the framework of the first exception to the general rule in both Delaware and Maryland: Martin–Marietta, and thus Lockheed, as Martin–Marietta's successor, incurred no liability for Wedron's torts unless Martin–Marietta expressly or impliedly assumed that liability in acquiring Wedron's assets. In the 1979 purchase and sale agreement, Wedron stated there were no liabilities that might adversely affect Martin–Marietta, except those disclosed in the balance sheet or in the agreement, as of the closing date. The balance sheet discloses no tort liabilities. Concerning the tort liabilities Wedron disclosed, both actual and contingent, Wedron and its insurers retained full responsibility. These recitals clarify Wedron's and Martin–Marietta's intent that the asset-acquisition agreement fall well within, rather than even marginally outside, the general rule of non-liability for the successor entity.

With respect to the five categories of "liabilities and obligations" of Wedron that Martin–Marietta assumed under Paragraph D of Section 5 of the agreement, we conclude these liabilities and obligations do not encompass contingent tort liabilities so as to expressly or impliedly take the asset-acquisition outside the general rule of non-liability followed in Delaware and Maryland. All of these liabilities and obligations (balance sheet; ordinary course of business; pension plans and other employee agreements; retirement plans; and leases and other contractual commitments) relate to everyday operation of the business Martin–Marietta acquired, and not to contingent tort liability. Wedron and Martin–Marietta clarified this apparent intent through the concluding exception in paragraph D of Section 5 of the agreement, which disclaims any other "liabilities and obligations" that did not appear on the balance sheet, that Wedron did not disclose, or that Martin–Marietta did not specifically consent, in writing, to assume as of the closing date.

■ The workers dispute this interpretation of the concluding exception by claiming it modifies only the preceding subparagraph (v), which lists leases and other contractual commitments. This interpretation has no merit because it renders meaningless the introduction to Paragraph D, and thus violates basic rules of contract interpretation. See *Northwestern Nat'l Ins. Co.*, 672 A.2d at 43; *Jones*, 356 Md. at 534, 740 A.2d at 1016. Paragraph D not only encompasses the five categories that follow, but also refers specifically to the concluding exception. Moreover, the concluding exception appears flush at the margin and directly beneath the introduction to Paragraph D. Accordingly, we conclude the exception modifies all of the five sub-paragraphs that precede it, and not just sub-paragraph (v).

■ The workers also contend that the liability for their alleged injuries is liability that Wedron sustained in the ordinary course of its business, which Martin–Mar-

ietta expressly assumed under sub-paragraph (ii) of Paragraph D. Considering Paragraph D(ii) within the context of the entirety of Paragraph D, as well as the entirety of the agreement, this is not a reasonable interpretation. The liabilities and obligations that Martin–Marietta assumed by paragraph D affect the day-to-day operation of the business. Moreover, the concluding exception specifically disclaims any other "material" liability or obligation, and Wedron also warranted, in Section 1(M) of the agreement, there were no other liabilities that "might adversely and materially affect" operations of its business than those it did disclose. That tort liabilities are not in the "ordinary course of business" is underscored by Wedron's having listed its known and contingent tort and environmental liabilities and obligations in separate exhibits to the sales agreement.

We conclude that Martin–Marietta did not expressly or impliedly assume liability for the workers' alleged injuries and that Lockheed was therefore entitled to summary judgment under both Delaware and Maryland law.

### 4. No Express Assumption under Texas Law

As addressed above, Texas strongly embraces the non-liability rule. To impose liability for a predecessor's torts, the successor corporation must have expressly assumed liability. TEX. BUS. CORP. ACT art. 5.10(B)(2). The statute protects both Texas corporations and foreign corporations like Lockheed, which is incorporated in Maryland. *See id.* We conclude there is no basis in Texas law for interpreting the 1979 purchase and sale agreement as encompassing an express assumption of liability for Wedron's alleged torts against the workers, for the same reasons that we rejected that interpretation under Delaware and Maryland law.

■ While we relied on the agreement itself, rather than case law, to conclude that, in expressly assuming "ordinary

course of business" liabilities and obligations, Martin–Marietta did not expressly or impliedly assume contingent tort liabilities, Texas precedents reject similar arguments. *See Mudgett,* 709 S.W.2d at 755 (applying Ohio law); *Southwestern Gas, Light & Power Co.,* 275 S.W. at 736; *see also Tuscarora Corp. v. HJS Indus., Inc.,* 794 S.W.2d 435, 439–40 (Tex.App.—Corpus Christi 1990, writ denied) (holding that successor merchant did not incur liability for predecessor's breach of purchase order by accepting transfer of obligations "entered into in the ordinary course of business" because this term refers to matters that transpire "as a matter of daily custom in business") (quoting from BLACK'S LAW DICTIONARY (4th ed.1979)).

We sustain Lockheed's first point of error. Having determined that Lockheed established its right to summary judgment, as a matter of law, on the grounds that it was not contractually liable as a successor to Wedron for its contingent torts, we need not address Lockheed's second point, which assigns error to the trial court's having not rendered summary judgment in favor of Lockheed on limitations grounds.

### Conclusion

We reverse the judgment of the trial court and render judgment that Lockheed is not contractually liable for any damages adjudicated against Wedron Silica Company of Delaware for the workers' alleged causes of action.