Opinion issued August 13, 2019



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-18-00252-CV

_____

**GILBERT KOUBA, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF AUDREY KOUBA, KAREN WILLIAMS AND CURTIS KOUBA, Appellants**

**V.**

**NORTHLAND INDUSTRIES, INC. D/B/A MAGNUM FITNESS, JHTNA MANUFACTURING, L.L.C., AND JOHNSON HEALTH TECH NORTH AMERICA, INC., Appellees**

---

On Appeal from the 25th District Court
Colorado County, Texas
Trial Court Case No. 241329-A

---

## O P I N I O N

A gym-goer died after sustaining injuries from falling off a treadmill that allegedly "unexpectedly changed speeds." Her surviving spouse and adult children

sued the treadmill's manufacturer, the entity that purchased the manufacturer's assets before the gym-goer fell, that asset purchaser's parent company, and other parties not before us in this appeal. They pleaded several theories and sought recovery for their damages and for the gym-goer's pain, anguish, medical expenses, and funeral and burial expenses.

Their claims included a cause of action against the asset purchaser and its parent for breach of the implied warranty of merchantability for the treadmill. That claim is based on provisions of the asset-purchase agreement under which the manufacturer sold its assets, and transferred certain liabilities, to the asset purchaser.

The trial court granted summary judgment against the plaintiffs on all claims against the manufacturer, asset purchaser, and asset purchaser's parent company and severed the rest of the suit, which involved the other defendants not before us. The severance made the summary judgment a final judgment as between the plaintiffs and the manufacturer, the asset purchaser, and its parent.

The plaintiffs appeal, contending that (1) the purchaser assumed liability in the asset-purchase agreement for the implied warranty of merchantability that arose out of the manufacturer's sale of the treadmill to the gym and (2) the purchaser's parent company is vicariously liable for the implied warranty under either a joint-enterprise theory or terms of the asset purchase agreement providing

2

that the parent would guarantee the purchaser's performance and obligations under the agreement.

In response, the manufacturer, asset purchaser, and its parent contend that certain other provisions of the agreement demonstrate that the asset purchaser did not agree to assume any liability for the implied warranty and that the implied warranty cannot arise out of the written warranty for the treadmill but only out of a contract for its sale, which is not present in the asset-purchase agreement. We affirm in part and reverse and remand in part.

## Background

Appellee Northland Industries, Inc., d/b/a Magnum Fitness, manufactured and sold treadmills. It sold a treadmill to a gym that Audrey Kouba later visited. One day while using the treadmill, she fell, striking her head. She later died due to her injuries from the fall.

Before her fall, Magnum Fitness sold its assets to JHTNA Manufacturing, L.L.C. ("JHTNA"). JHTNA purchased the assets, and assumed certain of Magnum Fitness's liabilities, under an asset-purchase agreement (the "Agreement"). Also in the Agreement, JHTNA's parent company, Johnson Health Tech North America, Inc. ("Johnson Health"), agreed to guarantee JHTNA's performance of and obligations under the Agreement.

3

JHTNA agreed to assume certain of Magnum Fitness's liabilities under the following provisions:

> 2.5    Assumption of Liabilities. Subject to the terms and conditions set forth herein at the Closing [JHTNA] shall assume and agree to pay, honor and discharge when due only the liabilities and obligations of [Magnum Fitness] specifically identified below relating to the Assets existing at or arising on or after the Closing Date (collectively, the "Assumed Liabilities"):
>
> . . . .
>
> 2.5.6. any Product Warranty Claim solely with respect to claims arising with respect to and during the time periods set forth in the written warranties of [Magnum Fitness] attached hereto on Schedules 3.1.17(a)(i) and 3.1.17(a)(ii).[1]

Schedule 3.1.17(a)(i) of the Agreement includes a "Commercial Treadmill Warranty," which provides:

> Magnum warrants to the ORIGINAL purchaser that their treadmill will be free from defects for the time periods listed in this form. Magnum will repair or replace the defective part, at Magnum's option, during the warranty period. Parts will be shipped free of charge within the USA.

| Lifetime | Frame |
|---|---|
| 3 years | Parts. Electronics, including motor, motor controller, all PCB's. Mechanical components. |
| 2 years | Deck and running bell |
| 1 year | Labor |

The Warranty concludes, "There are no additional warranties; either expressed or implied, arising out of the sale or this product other than those contained herein.

---

[1]    There are no written warranties in Schedule 3.1.17(a)(ii) of the Agreement.

Warranty is only for the repair or replacement of the product." The Agreement provides that Wisconsin law governs its validity, interpretation, and effect.

After Audrey Kouba's death, her surviving spouse and her two adult children—Appellants Gilbert Kouba, individually and as representative of her estate; Karen Williams; and Curtis Kouba (collectively, "Kouba")—sued Magnum Fitness, JHTNA, and Johnson Health (collectively, the "JHT Defendants"); the gym; and others. They alleged several causes of action against the JHT Defendants, including negligence, strict liability, and breach of the implied warranty of merchantability for the treadmill. They pleaded that Texas Business & Commerce Code section 2.314, which is part of Texas's enactment of the Uniform Commercial Code, gave rise to the applicable implied warranty.

The JHT Defendants moved for summary judgment on all claims against them. They contended that the Commercial Treadmill Warranty gave rise only to certain express warranties, and those only to the gym as the treadmill's original purchaser. Therefore, they argued, JHTNA assumed no implied warranty of merchantability for the treadmill under the Agreement. They also contended that provisions of the Agreement excluding any liability to JHTNA for "product liability claims" meant that JHTNA did not assume the implied warranty of merchantability.

5

In response to the motion for summary judgment, Kouba contended that (1) JHTNA assumed liability for the implied warranty of merchantability arising out of the sale of the treadmill to the gym under the Agreement and either Texas or Wisconsin law; (2) nothing in the Agreement waived the implied warranty of merchantability; (3) JHTNA is liable for the implied warranty of merchantability notwithstanding the lack of any privity of contract between it and Kouba; and (4) Johnson Health is liable for the implied warranty too either because it engaged in a joint enterprise with its subsidiary, JHTNA, or because it agreed in the Agreement to guarantee JHTNA's performance and obligations under the Agreement.

The trial court granted a complete summary judgment in the JHT Defendants' favor. It then severed the claims against the JHT Defendants from the rest of the suit, making the summary judgment a final judgment as between Kouba and the JHT Defendants.

## Analysis

Kouba challenges the trial court's conclusion that JHTNA is not liable for any implied warranty of merchantability relating to the treadmill. In both the summary-judgment briefing and the briefing on appeal, Kouba's contentions are based solely on the cause of action for breach of the implied warranty of

6

merchantability, ignoring the other causes of action dismissed by the summary judgment.

Kouba's only arguments for Johnson Health's liability are vicarious-liability arguments that depend on JHTNA's predicate liability. Thus, if JHTNA did not assume any liability for the implied warranty, then its parent, Johnson Health, is not liable on that claim either.

We consider the relevant portions of the Agreement and the law on the implied warranty of merchantability to review Kouba's challenge to the summary judgment.

## I.     Choice of law

The Agreement provides that Wisconsin law governs its validity, interpretation, and effect. Neither Kouba nor the JHT Defendants dispute the choice-of-law provision's validity, nor do they argue that Wisconsin law bears no reasonable relationship to the underlying facts.[2] We will therefore apply Wisconsin law to questions arising from interpretation of the Agreement. *See DBHL, Inc. v. Moen Inc.*, 312 S.W.3d 631, 635–36 (Tex. App.—Houston [1st Dist.] 2009, pet.

---

[2]     Kouba argues that Texas law supplies the underlying law for their cause of action for breach of the implied warranty of merchantability. This is an issue separate from whether JHTNA assumed liability for any implied warranty of merchantability under the Agreement, which requires an interpretation of the Agreement's terms. Wisconsin law controls the latter issue because the Agreement adopts Wisconsin law to govern its validity, interpretation, and effect. We need not reach the separate issue of whether Texas or Wisconsin law supplies Kouba's cause of action. *See* TEX. R. APP. P. 47.1.

denied); *Lockheed Martin Corp. v. Gordon*, 16 S.W.3d 127, 133–34 (Tex. App.—

Houston [1st Dist.] 2000, pet. denied).

## II. Summary judgment concerning successor liability by contractual assumption of claims

The majority rule for successor liability arising out of an asset purchase is

that an entity purchasing only the assets of another business is generally not subject

to liability for harm caused by defective products sold commercially by the former

owner of the assets. *See Lockheed Martin*, 16 S.W.3d at 134; *Columbia Propane,*

*L.P. v. Wis. Gas Co.*, 661 N.W.2d 776, 784, 786 (Wis. 2003) (citing *Lockheed*

*Martin*). Both Texas and Wisconsin law follow this majority rule. *See Lockheed*

*Martin*, 16 S.W.3d at 134–35; *Columbia Propane*, 661 N.W.2d at 784. The rule is

subject to four exceptions, only one of which applies here:[3] when purchasing the

assets, the purchaser may agree to assume liabilities. *See Lockheed Martin*, 16

S.W.3d at 134; *Columbia Propane*, 661 N.W.2d at 784.[4] Therefore, to support

---

[3]  The other three exceptions are (1) when the acquisition results from a fraudulent conveyance to escape liability for the debts or liabilities of the predecessor, (2) when the acquisition constitutes a consolidation or merger with the predecessor, and (3) when the acquisition results in the successor becoming a continuation of the predecessor. *See Lockheed Martin*, 16 S.W.3d at 134; *Columbia Propane*, 661 N.W.2d at 784. Kouba did not plead any of these other exceptions and did not raise any of them in either the summary-judgment briefing or in the briefing on appeal.

[4]  Under Wisconsin law, a purchaser may either "expressly or impliedly" agree to assume liabilities. *Columbia Propane*, 661 N.W.2d at 784. Not so under Texas law: a purchaser assumes liabilities only if it has expressly agreed to do so. *See Lockheed Martin*, 16 S.W.3d at 135. It is unnecessary to apply

summary dismissal of Kouba's cause of action for breach of the implied warranty of merchantability, the JHT Defendants' motion and evidence must establish as a matter of law that JHTNA did not assume liability for the implied warranty under the Agreement.

## A.    Standard of review and applicable law

We review summary judgments de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).[5] Under the standard for a traditional summary judgment, the movant must show that no genuine issue of material fact exists and that he or she is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *DBHL*, 312 S.W.3d at 639. When a motion for summary judgment raises multiple grounds and is granted, we affirm if any ground is

Wisconsin's implied-agreement rule here, however, because Kouba argues that JHTNA assumed liability for the implied warranty only by operation of the Agreement's express terms. Kouba notes that Wisconsin law allows for an implied agreement to assume liabilities and asserts that "JHTNA expressly and impliedly assumed Magnum Fitness's liability for breach of the implied warranty under Texas law in the" Agreement. But Kouba relies only on express terms in the Agreement and references no evidence or legal authority either to support the position that JHTNA impliedly agreed to assume the liability or to identify Wisconsin's legal standards for determining whether an implied agreement to assume liabilities exists. Kouba has therefore forfeited any separate contention on appeal that JHTNA impliedly agreed to assume liability under Wisconsin law. *See* TEX. R. APP. P. 38.1(i).

[5]    When we apply another jurisdiction's law under a contractual choice-of-law provision, we generally apply Texas procedural rules. *Nexen Inc. v. Gulf Interstate Eng'g Co.*, 224 S.W.3d 412, 417 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

9

meritorious. *Lockheed Martin*, 16 S.W.3d at 133. The movant is entitled to summary judgment when it conclusively disproves at least one element of the nonmovant's claim. *See Nexen Inc. v. Gulf Interstate Eng'g Co.*, 224 S.W.3d 412, 416 (Tex. App.—Houston [1st Dist.] 2006, no pet.). We take as true all evidence favorable to the nonmovant and indulge every reasonable inference, and resolve any doubts, in the nonmovant's favor. *DBHL*, 312 S.W.3d at 639.

"A motion for summary judgment must itself expressly present the grounds upon which it is made, and must stand or fall on these grounds alone." *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex. 1997) (citing TEX. R. CIV. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993)); *accord Orion Ref. Corp. v. UOP*, 259 S.W.3d 749, 759 n.17 (Tex. App.— Houston [1st Dist.] 2007, pet. denied).

When interpreting a written contract, our primary concern is to ascertain the true intentions of the parties as expressed in the contract. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Md. Arms Ltd. P'ship v. Connell*, 786 N.W.2d 15, 20 (Wis. 2010). To do so, we examine and consider the entire writing in an effort to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless. *See Coker*, 650 S.W.2d at 393; *Md. Arms*, 786 N.W.2d at 25. If the writing can be given a certain or definite legal meaning or interpretation, then it is not ambiguous, and we interpret it as a matter of law. *See Coker*, 650

10

S.W.2d at 393; *Estate of Kriefall v. Sizzler USA Franchise, Inc.*, 816 N.W.2d 853, 862 (Wis. 2012).

When we must apply the law to a sale of goods, we apply the Uniform Commercial Code ("UCC") as enacted by the legislature. *See* WIS. STAT. § 402.102; *Med. City Dall., Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 59 & n.3 (Tex. 2008); *Estate of Kriefall*, 816 N.W.2d at 860–62.

When interpreting a statute, we determine and give effect to the legislature's intent, which we discern by reference to the plain meaning of the statute's words. *See Austin v. Coface Seguro de Credito Mex., S.A. de C.V.*, 506 S.W.3d 707, 711 (Tex. App.—Houston [1st Dist.] 2016, pet. denied); *Bank Mut. v. S.J. Boyer Constr., Inc.*, 785 N.W.2d 462, 468 (Wis. 2010). When a statute is unambiguous, we apply it as written. *Austin*, 506 S.W.3d at 711; *Bank Mut.*, 785 N.W.2d at 468.

**B.    The trial court improperly granted summary judgment dismissing the cause of action for the implied warranty of merchantability**

Kouba first argues that the trial court erred by dismissing the implied-warranty claim because JHTNA assumed liability for it in the Agreement.

The Agreement states:

2.5    Assumption of Liabilities. Subject to the terms and conditions set forth herein at the Closing [JHTNA] shall assume and agree to pay, honor and discharge when due only the liabilities and obligations of [Magnum Fitness] specifically identified below relating to the Assets existing at or arising on or after the Closing Date (collectively, the "Assumed Liabilities"):

11

. . . .

2.5.6. any Product Warranty Claim[6] solely with respect to claims arising with respect to and during the time periods set forth in the written warranties of [Magnum Fitness] attached hereto on Schedules 3.1.17(a)(i) and 3.1.17(a)(ii).

Schedule 3.1.17(a)(i) includes a "Commercial Treadmill Warranty." Kouba asserts, and the JHT Defendants do not dispute, that the Commercial Treadmill Warranty is the warranty within that schedule that relates to the treadmill involved with Audrey Kouba's injury.

Under the assumption-by-agreement exception to the general rule of successor non-liability arising out of asset purchases, then, JHTNA assumed the implied warranty of merchantability for the treadmill only if the implied warranty was a "Product Warranty Claim solely with respect to claims arising with respect to and during the time periods set forth in" the Commercial Treadmill Warranty.[7]

We determine this issue against the backdrop of the UCC. The UCC defines and circumscribes the implied warranty of merchantability in goods sold. *See* WIS. STAT. § 402.314; *Perfect Birds, L.L.C. v. Kaytee Prods., Inc.*, No. W-08-CA-042, 2009 WL 10669535, at *3 (W.D. Tex. Sept. 4, 2009) (applying Wisconsin law);

---

[6]    The Agreement nowhere defines "Product Warranty Claim."

[7]    Kouba also argues that "JHTNA expressly assumed liability [for] Product Warranty Claims," period. But the Agreement's terms are more limited. Under them, JHTNA assumed liability for "any Product Warranty Claim solely with respect to claims arising with respect to . . . the written warranties of [Magnum Fitness] attached hereto on Schedules 3.1.17(a)(i) and 3.1.17(a)(ii)."

*Estate of Kriefall*, 816 N.W.2d at 861–64 & nn.10–12; *see also Howard Indus., Inc. v. Crown Cork & Seal Co.*, 403 S.W.3d 347, 349 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ("[B]ecause the transaction here involved the sale of goods, the [UCC] . . . governs Crown's breach of implied warranty of merchantability claim."); *Hartford v. Lyndon-DFS Warranty Servs., Inc.*, No. 01-08-00398-CV, 2010 WL 2220443, at *11–12 (Tex. App.—Houston [1st Dist.] May 28, 2010, no pet.) (mem. op.) ("Claims of breach of implied warranty of merchantability . . . arise under the [UCC]. . . . Common law warranties only protect services."). Kouba cites the UCC as the basis of the implied-warranty claim.

Under Wisconsin's enactment of the UCC, "[u]nless excluded or modified (s. 402.316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." WIS. STAT. § 402.314(1). The parties do not contest that an implied warranty of merchantability attached to Magnum Fitness's contract for the sale of the treadmill to the gym under Section 402.314. Section 402.316 allows parties to exclude implied warranties that would otherwise attach; however, the JHT Defendants concede that there was no effective exclusion of the implied warranty under Section 402.316 here, so there is no issue presented for our review about the operation of that statute's exclusion requirements. The sole issue before us, then, is

13

whether, under the Agreement, JHTNA assumed the implied warranty that came into existence at the treadmill's sale.

The Commercial Treadmill Warranty provides:

Magnum warrants to the ORIGINAL purchaser that their treadmill will be free from defects for the time periods listed in this form. Magnum will repair or replace the defective part, at Magnum's option, during the warranty period. Parts will be shipped free of charge within the USA.

| Lifetime | Frame |
|----------|-------|
| **3 years** | Parts. Electronics, including motor, motor controller, all PCB's. Mechanical components. |
| **2 years** | Deck and running bell |
| **1 year** | Labor |

The JHT Defendants' summary-judgment evidence describes the contract of sale between Magnum Fitness and the gym as including a purchase order. Reading the evidence in the light most favorable to Kouba, the contract of sale also includes the Commercial Treadmill Warranty. *See DBHL*, 312 S.W.3d at 639; *cf.* WIS. STAT. § 402.207 (permitting certain additional terms to be added to a contract of sale); *Consol. Papers, Inc. v. Dorr–Oliver, Inc.*, 451 N.W.2d 456, 459–61 (Wis. Ct. App. 1989) (holding terms and conditions on separate form to be part of parties' contract of sale). Aside from these two documents, neither party adduced evidence of any other statement or document that is part of the contract of sale of the treadmill between Magnum Fitness and the gym.

The UCC's implied warranty of merchantability, in Wisconsin and elsewhere, is a "gap-filling" provision. *See, e.g.*, *Dresser Indus., Inc. v. Gradall Co.*, 965 F.2d 1442, 1450–51 (7th Cir. 1992) (per curiam) (applying Wisconsin law); *Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1579–80 (10th Cir. 1984) (applying Pennsylvania law); *Stoughton Trailers, LLC v. ArcelorMittal Dofasco, Inc.*, No. 07-cv-374-bbc, 2008 WL 4722398, at *7–8 (W.D. Wis. Apr. 8, 2008) (applying Wisconsin law); *Premix–Marbletite Mfg. Corp. v. SKW Chems., Inc.*, 145 F. Supp. 2d 1348, 1356–57 (S.D. Fla. 2001) (applying Florida law); *In re L.B. Trucking, Inc.*, 163 B.R. 709, 722 (Bankr. D. Del. 1994) (applying Delaware law). Considering the documents comprised by the contract of sale here, Section 402.314's implied warranty of merchantability fills the gap in the express warranties found in the Commercial Treadmill Warranty, and not the purchase order, which contains no warranty-related provisions. A direct relationship exists between this contract of sale's implied warranty of merchantability and the Commercial Treadmill Warranty's express warranties. Applicable law permits an implied warranty to be superseded through the inclusion of an express warranty that addresses the same subject matter as the implied warranty, but with different terms. *See, e.g.*, WIS. STAT. § 402.317(3); *Consol. Papers*, 451 N.W.2d at 462. In such a situation, the express warranty obviates the need for the implied warranty. But supplanting does not necessarily happen when the express and implied

warranties are not inconsistent with each other, though they may nevertheless address the same subject. Here, both the Commercial Treadmill Warranty's express warranties and the implied warranty of merchantability are "Product Warranty Claim[s] . . . with respect to claims arising with respect to and during the time periods set forth in the written" Commercial Treadmill Warranty. But the JHT Defendants have not shown them to be inconsistent with each other. Both kinds of warranties arise out of the same express-warranty language, one expressly and the other by implication under Wisconsin law in the express-warranty language's gaps. This therefore disposes of the JHT Defendants' summary-judgment contention that JHTNA did not assume liability for the implied warranty under the terms of Paragraph 2.5.6. of the Agreement and the Commercial Treadmill Warranty.

The JHT Defendants also contend that any implied-warranty liability that they assumed under the Commercial Treadmill Warranty stopped with the original purchaser of the treadmill—the gym. The Wisconsin statute governing modifications of the implied warranty of merchantability disposes of this contention. Section 402.316 allows for wholesale exclusion of the implied warranty of merchantability in some circumstances, but, as noted above, the JHT Defendants have conceded any wholesale exclusion here. *Cf.* WIS. STAT. § 402.316(2), (3)(a)–(d). Aside from a wholesale exclusion, Section 402.316 allows the implied warranty to be "modified" either (i) with language "mention[ing]

16

merchantability and in case of a writing . . . conspicuous" or (ii) "by course of dealing or course of performance or usage of trade." *See id.* § 402.316(2), (3)(d). Nothing in the Commercial Treadmill Warranty mentioned "merchantability," however, and there is no indication in the JHT Defendants' summary-judgment evidence of a course of dealing, course of performance, or usage of trade that, as a matter of law, would have modified the implied warranty here to extend only to the gym's benefit. Therefore, this contention does not support the summary judgment either.

Finally, the JHT Defendants point to two provisions of the Agreement that refer to "product liability claims." The first excludes certain liabilities from being assumed by JHTNA:

> 2.6 <u>Excluded Liabilities</u>. Notwithstanding the provisions of Section 2.5 or any other provision hereof or any schedule or exhibit hereto and regardless of any disclosure to [JHTNA], [JHTNA] shall not assume any liabilities, obligations or commitments of [Magnum Fitness] relating to or arising out of the operation of the Business or the ownership of the Assets prior to the Closing, *including, but not limited to, any liability relating to product liability claims, other than the Assumed Liabilities* (the "<u>Excluded Liabilities</u>"). (Emphasis added.)

The second addresses insurance for "product liability claims":

> 6.2 <u>Product Liability Insurance</u>. For a period of four (4) years following the Closing Date, [JHTNA] shall keep in full force and effect one or more insurance policies written on a per occurrence basis which shall (i) insure [Magnum Fitness] and the Shareholders against *claims for bodily injury (including death) and property damage occurring after the Closing Date in connection with products sold by*

17

*[Magnum Fitness] prior to the Closing Date (each a "Product Liability Claim")* . . . . NOTWITHSTANDING ANYTHING IN THIS AGREEMENT TO THE CONTRARY, NOTHING IN THIS AGREEMENT OR ANY OF THE TRANSACTION DOCUMENTS SHALL CAUSE, OR BE CONSTRUED TO CAUSE, THE ASSUMPTION OF ANY OBLIGATION FOR PRODUCT LIABILITY CLAIMS BY [JHTNA]. (Emphasis added; all-capitalization in original.)

The Agreement specifically defines "product liability claim[s]": "claims for bodily injury (including death) and property damage occurring after the Closing Date in connection with products sold by [Magnum Fitness] prior to the Closing Date."

The use of "product liability claims" in Paragraphs 2.6 and 6.2 is notable because Paragraph 2.5.6.'s assumption-of-claims language uses the separate, but undefined, term "Product Warranty Claim." We assume that the contracting parties intended different meanings by using the different terms "product liability claim" and "product warranty claim" because interpreting them to mean the same thing would render one or the other term meaningless or redundant. *See MS Real Estate Holdings, LLC v. Donald P. Fox Family Tr.*, 864 N.W.2d 83, 96 n.7 (Wis. 2015) (rejecting contract interpretation that would render certain language meaningless or redundant); *Acuity v. Chartis Specialty Ins. Co.*, 861 N.W.2d 533, 549 (Wis. 2015) ("Slightly different [contract] language can have slightly different meanings."); *Dykstra v. Arthur G. McKee & Co.*, 301 N.W.2d 201, 205 (Wis. 1981) (interpreting contract's use of "in connection with performance" to give meaning

18

to "in connection with" because interpretation of "performance" alone would lead to result different from interpretation that gave meaning to both "in connection with" and "performance"); *see also First Am. Title Ins. Co. v. Patriot Bank*, No. 01-14-00170-CV, 2015 WL 2228549, at *3 (Tex. App.—Houston [1st Dist.] May 12, 2015, no pet.) (mem. op.); *DaimlerChrysler Motors Co. v. Manuel*, 362 S.W.3d 160, 185 (Tex. App.—Fort Worth 2012, no pet.); *Cmty. Improvement Ass'n of Lake Conroe Hills, Inc. v. Beckham*, No. 07-03-00036-CV, 2004 WL 2000666, at *4 (Tex. App.—Amarillo Sept. 8, 2004, no pet.) (mem. op.).

The JHT Defendants do not appear to dispute that the implied warranty would constitute a "product warranty claim," and the specific definition of "product liability claim" supports such a conclusion. A "product liability claim" is "for bodily injury (including death) *and* property damage." (Emphasis added.) The use of "and" instead of "or" makes a difference. "And" and "or" ordinarily carry the differing meanings of conjunction and disjunction. *See, e.g.*, *Bicknese v. Sutula*, 660 N.W.2d 289, 296 (Wis. 2003); *Hull v. State Farm Mut. Auto. Ins. Co.*, 586 N.W.2d 863, 867–68 (Wis. 1998); *see also Bd. of Ins. Comm'rs of Tex. v. Guardian Life Ins. Co.*, 180 S.W.2d 906, 908–09 (Tex. [Comm'n Op.] 1944); *Shell Petrol. Corp. v. Royal Petrol. Corp.*, 137 S.W.2d 753, 758 (Tex. [Comm'n Op.] 1940); *Cmty. Bank of Raymore v. Chesapeake Expl., L.L.C.*, 416 S.W.3d 750, 755, 757 (Tex. App.—El Paso 2013, no pet.). To be a "product liability claim" under

19

the Agreement, then, a claim must allege *both* bodily injury *and* property damage.[8]

Kouba's implied-warranty claim, however, alleges only bodily injury, so Paragraphs 2.6 and 6.2 do not compel a summary judgment in the JHT Defendants' favor.

\* \* \*

This disposes of all of the contentions that the JHT Defendants raised at summary judgment regarding Kouba's cause of action for breach of the implied warranty of merchantability against JHTNA. Also, the JHT Defendants' only summary-judgment contentions supporting dismissal of the implied-warranty claim against Johnson Health depended upon JHTNA's predicate non-liability for the same claim. Because summary judgment was not warranted for JHTNA, then, it was not warranted for Johnson Health either. Therefore, because none of the

---

[8]   Although the dissenting opinion finds this interpretation untenable, JHTNA and Magnum Fitness chose this definition for the Agreement. In Section 6.2 of the Agreement, the entire phrase "for bodily injury (including death) and property damage occurring after the Closing Date in connection with products sold by [Magnum Fitness] prior to the Closing Date" modifies the preceding term "claims." JHTNA chose to define "Product Liability Claim" with a conjunctively constructed modifier, not a disjunctively constructed one. Other definitions in the Agreement use disjunctively constructed modifiers to achieve a desired result. For example, Section 2.6 of the Agreement defines "Excluded Liabilities" as including "liabilities, obligations or commitments of [Magnum Fitness] relating to *or* arising out of the operation of the Business *or* the ownership of the Assets prior to the Closing." (Emphases added.) Had either of these instances used "and" in place of "or," the breadth of the "Excluded Liabilities" would have accordingly contracted.

20

contentions support a summary judgment in JHTNA's and Johnson Health's favor on the implied-warranty claim, we must reverse the summary judgment as to that cause of action against those two parties. *See Sci. Spectrum*, 941 S.W.2d at 912 (citing TEX. R. CIV. P. 166a(c); *McConnell*, 858 S.W.2d at 341); *accord Orion Ref.*, 259 S.W.3d at 759 n.17.

We affirm the remainder of the summary judgment, however, because Kouba's summary-judgment briefing in the trial court and briefing before us exclusively address the implied warranty and no other claim and exclusively address that claim concerning JHTNA and Johnson Health but not also Magnum Fitness. *See* TEX. R. CIV. P. 166a(c); TEX. R. APP. P. 38.1(i).

## Conclusion

We reverse the portion of the trial court's summary judgment granting JHTNA and Johnson Health's motion as to Kouba's cause of action for breach of the implied warranty of merchantability. We affirm the remainder of the summary judgment and remand the case to the trial court for further proceedings consistent with this opinion.


Gordon Goodman
Justice

Panel consists of Chief Justice Radack and Justices Goodman and Countiss.

Radack, C.J., dissenting in part.

21