# IN THE SUPREME COURT OF TEXAS

═══════════

No. 19-0835

═══════════

NORTHLAND INDUSTRIES, INC., D/B/A MAGNUM FITNESS, JHTNA MANUFACTURING, L.L.C., AND JOHNSON HEALTH TECH NORTH AMERICA, INC., PETITIONERS,

v.

GILBERT KOUBA, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF AUDREY KOUBA, KAREN WILLIAMS AND CURTIS KOUBA, RESPONDENTS

═══════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS

═══════════

**Argued October 7, 2020**

JUSTICE GUZMAN delivered the opinion of the Court.

JUSTICE BLAND did not participate in the decision.

In this dispute arising from a fatal treadmill injury, the sole issue is whether the entity who purchased the treadmill manufacturer's assets assumed an implied warranty of merchantability that attached, and was not disclaimed, when the manufacturer sold the treadmill. We hold that under the asset-purchase agreement's language, the asset purchaser assumed some of the manufacturer's liabilities and obligations but did not assume implied product warranties. We reverse the court of appeals' contrary judgment.

## I. Background

Northland Industries, Inc. (the Seller) manufactured and sold treadmills. JHTNA Manufacturing, L.L.C. (the Buyer) purchased the Seller's assets and assumed certain of its

liabilities and obligations, as "specifically identified" in the asset-purchase agreement. Following consummation of the asset-purchase transaction, the Seller dissolved.

While using a treadmill the Seller had previously sold to a local gym, Audrey Kouba fell and sustained fatal injuries when the treadmill allegedly "changed speeds" "unexpectedly." Her heirs (collectively, the Koubas) sued the Buyer and its parent company[1] for negligence, strict liability, and breach of the implied warranty of merchantability under Texas Business and Commerce Code section 2.314. The Buyer moved for summary judgment on all claims, asserting that (1) as an asset purchaser, it has no liability other than assumed liability, and (2) as part of the asset-purchase transaction, it assumed liability only for express repair-or-replacement warranties and expressly disclaimed any liability for bodily injury claims. The trial court granted summary judgment in the Buyer's favor as to all claims.

On appeal, the Koubas challenged summary judgment only as to the implied warranty of merchantability. The court of appeals reversed as to that claim and affirmed summary judgment on the unchallenged claims.[2] In reversing summary judgment, the court held that (1) under the asset-purchase agreement's terms, the Buyer assumed liability for implied warranties, and (2) the asset-purchase agreement excludes liability for bodily injury claims only when those claims are accompanied by claims for property damage.[3]

As to assumption of the implied warranty of merchantability, the court of appeals observed that the sales contract between Kouba's gym and the asset Seller consisted of a purchase order, an express written warranty (called the "Commercial Treadmill Warranty"), and any warranties

---

[1] The Buyer's parent company, Johnson Health Tech North America, Inc., guaranteed the Buyer's obligations under the asset-purchase agreement. Johnson Health's liability, if any, is premised solely on its relationship to the Buyer. Accordingly, for simplicity, we refer only to the Buyer in this opinion.

[2] 583 S.W.3d 857, 869 (Tex. App.—Houston [1st Dist.] 2019).

[3] *Id.* at 866-68.

implied by law that were not properly disclaimed.[4]  The Buyer admittedly assumed product

warranty claims arising from that written warranty and conceded that the implied warranty of

merchantability had not been excluded from the treadmill sales transaction under the operative

law.[5]  On that basis, and because the Buyer did not establish any inconsistency between the written

warranty and the implied warranty of merchantability, the court concluded that the implied

warranty "fill[ed] the gap[s]" in the written warranty such that the Buyer necessarily assumed the

implied warranty by expressly assuming the written warranty.[6]

The court also rejected the Buyer's argument that the asset-purchase agreement expressly

excluded liability for product liability claims involving bodily injury based on contract language

stating that "the Buyer shall not assume any liabilities . . . including, but not limited to, any liability

relating to product liability claims, other than the Assumed Liabilities[.]"[7]  The phrase "product

liability claims" is not defined in the excluded-liabilities clause, but the court relied on an

ostensible definition of that phrase in a provision obligating the Buyer to secure product liability

insurance "insur[ing] the Seller . . . against claims for bodily injury (including death) *and* property

damage occurring after the Closing Date in connection with products sold by the Seller prior to

the Closing Date (each a 'Product Liability Claim')."[8]  Notwithstanding the language defining

---

[4] *Id.* at 866.

[5] *Id.* at 866-67.

[6] *Id*.

[7] *Id.* at 868.  The asset-purchase agreement states:

> 2.6 Excluded Liabilities. Notwithstanding the provisions of Section 2.5 or any other provision hereof or any schedule or exhibit hereto and regardless of any disclosure to the Buyer, the Buyer shall not assume any liabilities, obligations or commitments of the Seller relating to or arising out of the operation of the Business or the ownership of the Assets prior to the Closing, including, but not limited to, any liability relating to product liability claims, other than the Assumed Liabilities (the "Excluded Liabilities").

[8] *Id.* at 867-68 (emphasis added).  The insurance obligation is articulated as follows:

"each" as "a 'Product Liability Claim,'" the court reasoned that the insurance provision's use of "and" between "bodily injury" and "property damage" meant that when the term "product liability claims" was used in the excluded-liabilities clause, only claims involving *both* bodily injury *and* property damage were expressly excluded.[9] Because the Koubas' claim alleged *only* bodily injury, the court held it was not an excluded product liability claim.[10]

One justice dissented as to both holdings. Based on the language in the asset-purchase agreement's assumed-liabilities provision, the dissent construed the contract as limiting the assumed liabilities to repair or replacement of defective treadmill parts.[11] The dissent relied on contract language describing the assumed liabilities and obligations as those "specifically identified," which as to "Product Warranty Claims" was "solely" those claims arising with respect to "the written warranties" attached to the contract.[12] The only written warranty identified in the contract offers the exclusive remedy of repair or replacement of specified parts for specified time periods.[13] The dissent concluded that the narrow assumption of product warranty claims was reinforced by the express exclusion of liability for bodily injury claims.[14] In the dissent's view,

---

6.2. Product Liability Insurance. For a period of four (4) years following the Closing Date, the Buyer shall keep in full force and effect one or more insurance policies written on a per occurrence basis which shall (i) insure the Seller and the Shareholders against claims for bodily injury (including death) and property damage occurring after the Closing Date in connection with products sold by the Seller prior to the Closing Date (each a "Product Liability Claim") . . . NOTWITHSTANDING ANYTHING IN THIS AGREEMENT TO THE CONTRARY, NOTHING IN THIS AGREEMENT OR ANY OF THE TRANSACTION DOCUMENTS SHALL CAUSE, OR BE CONSTRUED TO CAUSE, THE ASSUMPTION OF ANY OBLIGATION FOR PRODUCT LIABILITY CLAIMS BY THE BUYER.

[9] *Id.* at 868.

[10] *Id.*

[11] *Id.* at 870 (Raddack, C.J., dissenting).

[12] *Id.* at 869.

[13] *Id.* at 870.

[14] *Id.* at 871.

"[i]t cannot be true that, in order to assert a valid product liability claim under the Agreement, one must also allege property damage," because "[t]hat is an absurd result."[15]

On petition for review to this Court, the Buyer challenges the court of appeals' construction of the asset-purchase agreement as to both the assumed and excluded liabilities. Because we construe the contract as assuming only the written warranty "specifically identified" in the asset-purchase agreement, we do not reach the excluded-liabilities issue.

## II. Discussion

### A. Applicable Standards

Under the majority rule, an asset purchaser does not assume the seller's liabilities for harm caused by defective products the predecessor sold commercially, unless an exception applies.[16] "The rule of non-liability for asset acquisitions is frequently the reason why parties choose that option in acquiring a business, as opposed to a merger or stock acquisition, in which the predecessor's obligations and liabilities continue in the surviving entity."[17]

The Koubas assert the Buyer's express assumption of certain product warranty claims gives rise to successor liability for breach of the implied warranty of merchantability.[18] The Buyer does not dispute that it assumed some of the Seller's liabilities and obligations but maintains that with respect to product warranty claims, it assumed only the written repair-and-replacement warranty expressly identified in the asset-purchase agreement. Whether the Buyer assumed the Seller's implied warranties is determined by the asset-purchase agreement's terms, which we construe

---

[15] *Id.*

[16] *Lockheed Martin Corp. v. Gordon*, 16 S.W.3d 127, 134 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).

[17] *Id.*

[18] *See id.* (noting an exception to the majority rule exists when the buyer agreed to assume liability).

under Wisconsin law based on the agreement's mandate that Wisconsin law governs "in all respects, including as to [the agreement's] validity, interpretation and effect[.]"

Both Texas and Wisconsin follow the majority rule regarding successor liability; both recognize an assumed-liability exception;[19] and both apply nearly identical contract-construction principles.[20] Applying familiar principles, we construe the unambiguous asset-purchase agreement as a matter of law.[21] The primary consideration is to "give effect to the parties' intent, as expressed in the contractual language."[22] We ascertain that intent by giving words the meaning a reasonable person would afford them under the circumstances[23] and by construing them within the contractual context as a whole, not in isolation.[24] Absent absurdity, contracts must be interpreted according to their literal terms.[25]

### B. The Asset-Purchase Agreement's Limited Assumption of Liabilities

Under the Uniform Commercial Code (UCC), as adopted by both Texas and Wisconsin, a warranty of merchantability is implied in contracts for the sale of goods if the seller is a merchant with respect to goods of the kind, unless the warranty is properly excluded or modified.[26] Here, it

---

[19] *See id.*; *see also* TEX. BUS. ORG. CODE § 10.254(b) ("Except as otherwise expressly provided by another statute, a person acquiring property [other than by merger or conversion] may not be held responsible or liable for a liability or obligation of the transferring domestic entity that is not expressly assumed by the person."); *Columbia Propane, L.P. v. Wis. Gas Co.*, 661 N.W.2d 776, 784 (Wis. 2003) (recognizing exceptions to the rule against successor liability include "when the purchasing corporation expressly or impliedly agreed to assume the selling corporation's liability").

[20] *Compare, e.g.*, *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983), *with Maryland Arms Ltd. P'ship v. Connell*, 786 N.W.2d 15, 20-21 (Wis. 2010).

[21] *Coker*, 650 S.W.2d at 393.

[22] *Maryland Arms*, 786 N.W.2d at 20 (internal quotations omitted).

[23] *Id.*

[24] *See Gonzalez v. City of Franklin*, 403 N.W.2d 747, 752-53 (Wis. 1987); *Crown Life Ins. Co. v. LaBonte*, 330 N.W.2d 201, 206 (Wis. 1983).

[25] *Maryland Arms*, 786 N.W.2d at 21, 25.

[26] *See* TEX. BUS. & COM. CODE § 2.314 ("Unless excluded or modified (Section 2.316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."); WIS. STAT. § 402.314 (same).

is undisputed that an implied warranty of merchantability attached to the treadmill's sale when Kouba's gym purchased it from the Seller and the implied warranty was not disclaimed or modified in the manner the UCC requires. The only question is whether the Buyer agreed to assume liability for implied warranty claims. As to that matter, the plain language in Sections 2.5 and 2.5.6 of the asset-purchase agreement is dispositive.

As stated in Section 2.5, the Buyer agreed to assume only "specifically identified" liabilities and obligations:

> <u>Assumption of Liabilities</u>. Subject to the terms and conditions set forth herein at the Closing the ***Buyer shall assume*** and agree to pay, honor and discharge when due ***only the liabilities and obligations of the Seller specifically identified below*** relating to the Assets existing at or arising on or after the Closing Date (collectively, the "<u>Assumed Liabilities</u>")[.][27]

In several numbered paragraphs that follow, the Buyer assumed responsibility for lease obligations, various forms of taxes, certain accounts payable, specific contracts, and certain employee wages and benefits. The Buyer also assumed product warranty claims on the following terms:

> 2.5.6. any Product Warranty Claim ***<u>solely with respect to</u>*** claims arising with respect to and during the time periods set forth in ***the written warranties*** of the Seller ***attached hereto*** on Schedules 3.l.17(a)(i) [Commercial Treadmill Warranty] and 3.1.l7(a)(ii) [any Special Product Warranties][.][28]

Written warranties are "made in writing,"[29] and those warranties are "express" in that they are created by the seller's overt words.[30] Implied warranties are the opposite. An implied warranty is an "obligation implied by the law when there has been no representation or promise; [especially]

---

[27] Emphases added.

[28] Emphases added.

[29] *Written Warranty*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[30] *Express Warranty*, BLACK'S LAW DICTIONARY (11th ed. 2019).

a warranty arising by operation of law because of the circumstances of a sale, rather than by the seller's express promise."[31] Implied warranties, by their very nature, are not written. Nor do implied warranties "*aris[e]* with respect to . . . written warranties"—which is the language the Buyer used here to assume product warranty claims. Rather, they *arise* by operation of law *with respect to* the underlying transaction. The implied warranty of merchantability, for example, arises in connection with the sale of goods.[32] While implied warranties may coexist with written warranties or be modified or displaced by written warranties,[33] each is distinct in form and formation.

In this case, as all parties agree, no writing modified or displaced the implied warranty of merchantability.[34] But per the contract's language, the Buyer assumed liability "solely" for those product warranty claims "arising with respect to" the Seller's "written warranties" as "specifically identified," "set forth," and "attached" to the asset-purchase agreement. The only warranty that fits the bill for the product at issue here is the "Commercial Treadmill Warranty" attached in Schedule 3.1.17(a)(i),[35] and "solely" means "to the exclusion of all else"; "without another."[36]

---

[31] *Implied Warranty*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 435 (Tex. 1997).

[32] *See* TEX. BUS. & COM. CODE § 2.314; WIS. STAT. § 402.314.

[33] *See Baker Hughes Process & Pipeline Servs., L.L.C. v. UE Compression, L.L.C.*, 938 F.3d 661, 671 (5th Cir. 2019) (quoting TEX. BUS. & COM. CODE § 2.317); *Consol. Papers, Inc. v. Dorr-Oliver, Inc.*, 451 N.W.2d 456, 462 (Wis. Ct. App. 1989) (quoting WIS. STAT. § 402.317).

[34] *See* TEX. BUS. & COM. CODE § 2.316 (providing the requirements for disclaiming the implied warranty of merchantability); WIS. STAT. § 402.316 (same).

[35] Other product warranties in Schedule 3.1.17(a)(i) include "Group Exercise Bike Warranty," "Commercial Cardio Warranty," and "Commercial Strength Warranty." The Buyer also agreed to assume liability arising from any "Special Product Warranties," but Schedule 3.1.17(a)(ii) of the asset-purchase agreement states there are "[n]one," and the parties do not contend otherwise.

[36] *Solely*, WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1984); *see Solely*, WEBSTER'S THIRD NEW INT'L DICTIONARY (2002).

The Commercial Treadmill Warranty, as set forth and described in Schedule 3.1.17(a)(i), provides:

> [Seller] warrants to the ORIGINAL purchaser that their treadmill will be free from defects for the time periods listed in this form. [Seller] will *repair or replace the defective part*, at [Seller]'s option, during the warranty period.
>
> . . . .

| Lifetime | Frame |
|----------|-------|
| **3 years** | **Parts, Electronics, including motor, motor controller, all PCB's. Mechanical components.** |
| **2 years** | **Deck and running belt** |
| **1 year** | **Labor** |

> . . . .
>
> There are *no additional warranties; either expressed or implied*, arising out of the sale of this product other than those contained herein. *Warranty is only for the repair or replacement of the product.* No additional coverage to any consequential damages arising from the use or non-use of this product.[37]

In plain language, the written warranty guarantees to the original purchaser *only* that defective treadmill parts will be repaired or replaced and *only* for specific time periods. The written warranty further clarifies that repair or replacement of the treadmill is the exclusive warranty remedy. Implied warranties are not "specifically identified" in the warranty the assumed-liabilities provision references; to the contrary, such warranties are specifically denied.

The Commercial Treadmill Warranty's attempted disclaimer of any other warranties "expressed or implied" might have been ineffective under the UCC to exclude the implied warranty of merchantability from the treadmill sales transaction. But the disclaimer language nonetheless confirms the *Buyer*'s intent to assume *only* the written warranty for repair or replacement of treadmill parts, which included no "additional warranties, either expressed or implied[.]" The relevant inquiry is not whether an implied warranty of merchantability attached to the treadmill's

---

[37] Emphases added.

sale, as the court of appeals concluded. Rather, the question is whether the asset-purchase agreement, construed as a whole, demonstrates *the Buyer's intent* to assume the implied warranty of merchantability. It does not. Under the asset-purchase agreement's unambiguous language, the Buyer assumed only the obligation to repair-or-replace on the terms set out in Schedule 3.1.17(a)(i).

In arguing the contrary, the Koubas cite Section 3.1.17(a) of the asset-purchase agreement as expanding on the assumption language in Section 2.5.6 to include other claims under warranties that arise under the law, which would include the implied warranty of merchantability. Section 3.1.17(a) provides:

> Warranties. The Buyer has been furnished with complete and correct copies of the standard terms and conditions of sale for each of the products or services of the Seller (containing applicable guaranty, warranty and indemnity provisions) which are set forth on Schedule 3.l.17(a)(i). ***Except as required by Applicable Law*** or as set forth on Schedule 3.1.17(a)(ii), ***no product*** manufactured, sold, or delivered by, or service rendered by or on behalf of, the Seller ***is subject to any guaranty, warranty or other indemnity, express or implied, beyond such standard terms and conditions.***[38]

Section 3.1.17(a) does not support the Koubas' construction of the contract for at least two reasons.

First, in Section 2.5.6, the Buyer agreed to assume only Product Warranty Claims arising with respect to the written warranties in Schedules 3.1.17(a)(i) (the Commercial Treadmill Warranty) and 3.1.17(a)(ii) (any Special Product Warranties, of which there are "[n]one"), not any unwritten warranties that might be described in Section 3.1.17(a). Second, Section 3.1.17(a) merely guarantees the accuracy of the Commercial Treadmill Warranty as set forth in Schedule 3.1.17(a)(i) and the denial of any Special Product Warranties as stated in Schedule 3.1.17(a)(ii). While it is true that the guarantee provision in Section 3.1.17(a) acknowledges that other warranties may exist by operation of law, it does not include language that can reasonably be

---

[38] Emphases added.

construed as assuming any such warranties. Section 3.1.17(a) is a disclosure statement, not an assumption of liability. Under the applicable law, the Buyer is subject only to the Seller's liabilities that it assumed in the asset-purchase agreement—not all warranties to which the Seller was subject.[39]

Because we conclude the Buyer did not assume the Seller's implied warranty obligations, the Buyer has no liability for breach of the implied warranty of merchantability as a matter of law, and the trial court properly granted summary judgment on that basis.[40]

### III. Conclusion

Subject to exceptions not applicable here, an asset purchaser inherits none of the asset seller's liability absent an agreement to do so. Based on the asset-purchase agreement's plain and unambiguous language, the Buyer's express assumption of the written warranty for repair or replacement of defective treadmill parts was not an assumption of a warranty of merchantability implied by law. Accordingly, the Buyer was entitled to summary judgment. We reverse the court of appeals' judgment to the contrary and render judgment that the Koubas take nothing on their implied warranty of merchantability claim.

Justice Eva M. Guzman

**Opinion Delivered:** October 23, 2020

---

[39] *Columbia Propane, L.P. v. Wis. Gas Co.*, 661 N.W.2d 776, 784 (Wis. 2003); *accord Lockheed Martin Corp. v. Gordon*, 16 S.W.3d 127, 134 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).

[40] *See* TEX. R. CIV. P. 166a(c).